1

SINGER BEA LLP
   Benjamin L. Singer (Bar. No. 264295)
   bsinger@singerbea.com
   Evan N. Budaj (Bar No. 271213)
   ebudaj@singerbea.com
601 Montgomery Street, Suite 1950
San Francisco, California  94111
Telephone:    (415) 500-6080
Facsimile:    (415) 500-6080

2

3

4

5

6

*Attorneys for Plaintiff Software Research, Inc.*

7

UNITED STATES DISTRICT COURT

8

NORTHERN DISTRICT OF CALIFORNIA

9

SAN FRANCISCO DIVISION

10

11

| | |
|---|---|
| SOFTWARE RESEARCH, INC., | CASE NO. 3:18-CV-232 |
| Plaintiff, | **COMPLAINT FOR PATENT INFRINGEMENT** |
| v. | |
| DYNATRACE LLC, and DOES 1 through 10, | **JURY TRIAL DEMANDED** |
| Defendants. | |

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Software Research, Inc. ("SRI"), for its complaint against Defendants Dynatrace LLC ("Dynatrace") and Does 1 through 10 (collectively, "Defendants"), upon information and belief, states and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

2. As set forth in more detail below, Defendants have been infringing United States Patent Nos. 7,757,175 (the "'175 Patent"); 8,327,271 (the "'271 Patent"); 8,392,890 (the "'890 Patent"); 8,495,585 (the "'585 Patent"); 8,650,493 (the "'493 Patent"), and 8,984,491 (the "'491 Patent")  (collectively, the "Patents-in-Suit"), and continue to do so through the present date.

## THE PARTIES

3. SRI is a corporation organized and existing under the laws of the State of California with its principal place of business in this District.

4. Upon information and belief, Dynatrace is a Delaware corporation with its principal place of business at 1601 Trapelo Road, Suite 116, Waltham, MA 02451.

5. Upon information and belief, Defendants Does 1 through 10 are directors, officers, employees, representatives, and/or agents of Dynatrace who participated and/or are currently participating in the use, development, sale, offer for sale, import, offer for import, and/or other commercialization of software offerings that infringe one or more of the Patents-in-Suit.  The true identities of Defendants Does 1 through 10 are presently unknown to SRI; SRI will amend its complaint to state such names when they become known to SRI through discovery and/or continued investigation.

6. Unless specifically stated otherwise, the acts complained of herein were committed by, on behalf of, and/or for the benefit of Dynatrace.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8. This Court has personal jurisdiction over Defendants because (a) they have committed the acts of patent infringement complained of herein, including but not limited to offering for sale or

singer bea LLP

selling infringing products embodying SRI's patented invention, in this State and this District, and/or (b) they have directed their acts of infringement and the other unlawful acts complained of herein at this State and this District.

9.      This Court has personal jurisdiction over Defendants for the additional reason that they have engaged in systematic and continuous contacts with this State and this District by, *inter alia*, regularly conducting and soliciting business in this State and this District, and deriving substantial revenue from products and/or services provided to persons in this State and this District.

10.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the acts complained of herein occurred in this District, Defendants transact business in this District, Defendants reside in this District, and/or the property that is the subject of this action is situated in this District.

11.      Venue is proper in this District under 28 U.S.C. §§ 1391(c)-(d) and 1400(b) because (i) Defendants reside in this District; and (ii) Defendants have committed acts of infringement and have a regular and established place of business in this District.

**<u>COUNT I – INFRINGEMENT OF THE '175 PATENT</u>**

12.      SRI re-alleges and incorporates the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

13.      SRI is the assignee and owner of all right, title, and interest in and to the '175 Patent, which was issued on July 13, 2010.  A true and correct copy of the '175 Patent is attached hereto as Exhibit A.

14.      The '175 Patent addresses an invention for testing websites.  This disclosed innovation tests many facets of the website's experience and operation, including by providing novel approaches to creating, storing, and executing test scripts using website elements as opposed to the previously disclosed use of recording test scripts based upon user actions only.

15.      SRI has the exclusive right to make, use, sell, and offer to sell any product embodying the '175 Patent throughout the United States, and to import any product embodying the '175 Patent into the United States.

16.     SRI has commercially exploited the '175 Patent by making, marketing, selling, and using products covered by the '175 Patent, including its popular eValid™ software products.

17.     Upon information and belief, Dynatrace has had knowledge of SRI and its products embodying the inventions claimed in the '175 Patent at least as early as December 27, 2010.

18.     At all relevant times, SRI provided public notice of the '175 Patent by properly marking its products under 35 U.S.C. § 287(a).

19.     Upon information and belief, Dynatrace has had knowledge of the '175 Patent at least as early as December 27, 2010.

20.     Defendants have been, and are currently, directly infringing at least claim 11 of the '175 Patent in violation of 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by using certain website testing software, including without limitation Defendants' web application monitoring and scripting tool software products titled, upon information and belief, "Dynatrace Performance Management" (hereinafter "DPM") and/or other related software products and services offered by Dynatrace (Defendants' "Infringing Products"), that practices the method disclosed in the '175 Patent for testing a website residing on a network using a test-enabled browser by accessing a website to be tested using the test-enabled browser; selecting a validation test to be performed, such as the "Validate" and "Wait for Validation" functionality detailed in the literature available on Dynatrace's website; newly rendering the webpage to be tested by the test-enabled browser so as to extract details of that page using Document Object Model ("DOM") elements, and store the same in a recorded script, such as via the testing component of DPM; performing the selected validation test using the test-enabled browser; and comparing the details in the newly rendered page against those stored in the recorded script.

21.     Defendants will, on information and belief, continue to directly infringe the '175 Patent unless enjoined.

22.     To the extent Defendants' Infringing Products, without more, do not directly infringe at least claim 17 of the '175 Patent, Defendants contribute to infringement of the same under 35 U.S.C. § 271(c) inasmuch as the Infringing Products offered for sale and sold by Defendants are each a component of a patented machine or an apparatus used in practicing a patented process, constituting

singer bea LLP

a material part of SRI's invention, knowing the same to be especially made or especially adapted for use in infringement of the '175 Patent.

23. Defendants will, on information and belief, continue to contribute to infringement of the '175 Patent unless enjoined.

24. Defendants actively encourage their customers to use Defendants' Infringing Products in an infringing manner. For example, Defendants' website is replete with written directions, screenshots, and videos instructing users on how to use the Infringing Products in an infringing manner. Defendants' website also touts the identities of customers who use the Infringing Products, each of whom is a direct infringer inasmuch as they use the Infringing Products in the infringing manner as instructed by Defendants.

25. Defendants' acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

26. Defendants have been aware of the '175 Patent since at least as early as the filing of the instant Complaint.

27. Upon information and belief, and particularly by way of the detailed documentation instructing users on how to use the Infringing Products in an infringing manner, Defendants have encouraged this infringement with knowledge of the '175 Patent and with a specific intent to cause their customers and distributors to infringe.

28. Defendants will, on information and belief, continue to induce infringement of the '175 Patent unless enjoined.

29. Defendants' direct infringement, contributory infringement, and inducement of infringement have irreparably harmed SRI.

30. Defendants will, on information and belief, continue to irreparably harm SRI unless enjoined.

31. Pursuant to 35 U.S.C. § 284, SRI is entitled to damages adequate to compensate for the infringement but in no event less than a reasonable royalty.

32. Defendants' infringement has been and is willful and, pursuant to 35 U.S.C. § 284, SRI is entitled to treble damages.

singer bea LLP

33.     This case is "exceptional" within the meaning of 35 U.S.C. § 285, and SRI is entitled to an award of attorneys' fees.

## COUNT II – INFRINGEMENT OF THE '271 PATENT

34.     SRI re-alleges and incorporates the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

35.     SRI is the assignee and owner of all right, title, and interest in and to the '271 Patent, which was issued on December 4, 2012.  A true and correct copy of the '271 Patent is attached hereto as Exhibit B.

36.     The '271 Patent addresses an invention for testing websites.  This disclosed innovation tests many facets of the website's experience and operation, including by providing novel approaches to creating, storing, and executing test scripts using website elements as opposed to the previously disclosed use of recording test scripts based upon user actions only.

37.     SRI has the exclusive right to make, use, sell, and offer to sell any product embodying the '271 Patent throughout the United States, and to import any product embodying the '271 Patent into the United States.

38.     SRI has commercially exploited the '271 Patent by making, marketing, selling, and using products covered by the '271 Patent, including its popular eValid™ software products.

39.     Upon information and belief, Dynatrace has had knowledge of SRI and its products embodying the inventions claimed in the '175 Patent at least as early as December 27, 2010.

40.     At all relevant times, SRI provided public notice of the '271 Patent by properly marking its products under 35 U.S.C. § 287(a).

41.     Upon information and belief, Dynatrace has had knowledge of the '271 Patent at least as early as December 4, 2012.

42.     Defendants have been, and are currently, directly infringing at least claim 1 of the '271 Patent in violation of 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, and offering for sale Defendants' Infringing Products, which, as set forth in documentation available on Defendants' website, consist of non-transitory computer readable media—both as maintained in Defendants' files and those of the users to whom Defendants offer and

singer bea LLP

sell the Infringing Products—including at least computer program code stored therein for providing a test-enabled browser for testing a website residing on a network; computer program code for interfacing with web browsing components, the web browsing components including DOM access methods of the web browsing components; computer program code for accessing a website to be tested; computer program code for rendering and examining at least one web page of the website so as to at least extract details of organization and structure of elements of the webpage, and store such details of the web page in a recorded script, such as recorded scripts generated through the testing component of Defendants' Infringing Products; computer program code for selecting a validation test to be performed, such as the "Validate" and "Wait for Validation" functionality detailed in Defendants' technical documentation; and computer program code for performing the validation test using at least one of the DOM access methods of the web browsing components, wherein during the validation test, the at least one web page is newly rendered and details of organization and structure of elements for the at least one web page as newly rendered are accessed via the at least one of the DOM access methods and compared to the stored details in the recorded script, as disclosed in the '271 Patent.

43.     Defendants will, on information and belief, continue to directly infringe the '271 Patent unless enjoined.

44.     To the extent Defendants' Infringing Products, without more, do not directly infringe at least claim 1 of the '271 Patent, Defendants contribute to infringement of the same under 35 U.S.C. § 271(c) inasmuch as the Infringing Products offered for sale and sold by Defendants are each a component of a patented machine or an apparatus used in practicing a patented process, constituting a material part of SRI's invention, knowing the same to be especially made or especially adapted for use in infringement of the '271 Patent.

45.     Defendants will, on information and belief, continue to contribute to infringement of the '271 Patent unless enjoined.

46.     Defendants actively encourage their customers to use Defendants' Infringing Products in an infringing manner.  For example, Defendants' website is replete with written directions, screenshots, and videos instructing users on how to use the Infringing Products in an infringing

singer bea LLP

manner.  Defendants' website also touts the identities of customers who use the Infringing Products, each of whom is a direct infringer inasmuch as they use the Infringing Products in the infringing manner as instructed by Defendants.

47.     Defendants have been aware of the '271 Patent since at least as early as the filing of the instant Complaint.

48.     Upon information and belief, and particularly by way of the detailed documentation instructing users on how to use the Infringing Products in an infringing manner, Defendants have encouraged this infringement with knowledge of the '271 Patent and with a specific intent to cause their customers and distributors to infringe.

49.     Defendants' acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

50.     Defendants will, on information and belief, continue to induce infringement of the '271 Patent unless enjoined.

51.     Defendants' direct infringement and their actions inducing others to infringe have irreparably harmed SRI.

52.     Defendants will, on information and belief, continue to irreparably harm SRI unless enjoined.

53.     Pursuant to 35 U.S.C. § 284, SRI is entitled to damages adequate to compensate for the infringement but in no event less than a reasonable royalty.

54.     Defendants' infringement has been and is willful and, pursuant to 35 U.S.C. § 284, SRI is entitled to treble damages.

55.     This case is "exceptional" within the meaning of 35 U.S.C. § 285, and SRI is entitled to an award of attorneys' fees.

## COUNT III – INFRINGEMENT OF THE '890 PATENT

56.     SRI re-alleges and incorporates the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

57.     SRI is the assignee and owner of all right, title, and interest in and to the '890 Patent, which was issued on March 5, 2013.  A true and correct copy of the '890 Patent is attached hereto as Exhibit C.

58.     The '890 Patent addresses an invention for testing websites.  The disclosed innovation tests many facets of the website's experience and operation, including by providing novel approaches to creating, storing, and executing test scripts capable of accurately testing Asynchronous Javascript and XML ("AJAX") web page elements.

59.     SRI has the exclusive right to make, use, sell, and offer to sell any product embodying the '890 Patent throughout the United States, and to import any product embodying the '890 Patent into the United States.

60.     SRI has commercially exploited the '890 Patent by making, marketing, selling, and using products covered by the '890 Patent, including its popular eValid™ software products.

61.     Upon information and belief, Dynatrace has had knowledge of SRI and its products embodying the inventions claimed in the '890 Patent at least as early as December 27, 2010.

62.     At all relevant times, SRI provided public notice of the '890 Patent by properly marking its products under 35 U.S.C. § 287(a).

63.     Upon information and belief, Dynatrace has had knowledge of the '890 Patent at least as early as March 5, 2013.

64.     Defendants have been, and are currently, directly infringing at least claim 6 of the '890 Patent in violation of 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, and offering for sale Defendants' Infringing Products, which, as set forth in documentation available on Defendants' website, consist of non-transitory computer readable media—both as maintained in Defendants' files and those of the users to whom Defendants offer and sell the Infringing Products—including at least computer program code stored therein for providing a test-enabled web browser, said medium comprising computer program code for providing web browsing capabilities; computer program code for testing capabilities of a website hosted by a server and accessible to the computer via a network wherein the computer program code for testing capabilities of the website provides playback of one or more test scripts, including through the testing

component of the Infringing Products, the one or more test scripts being separate from the website; wherein the computer program code for testing capabilities is configured to keep track of named DOM element property values within a webpage of the website to provide support for playback of one or more test scripts that were recorded from and/or are played back via the test enabled web browser, wherein the use of the named DOM element property values provides support for synchronizing playback of the one or more test scripts and allows the computer program code for testing capabilities of the website of the test enabled web browser to compensate for at least a portion of the webpage being dynamically generated by AJAX programming; and wherein at least one command is provided in the one or more test scripts, and the at least one command operates, when performed, to find a current index of at least one DOM element of the webpage based on a specified property name and/or property value, and (i) submit a named event to the at least one DOM element of the webpage having the current index, or (ii) insert or verify a value in the at least one DOM element of the webpage having the current index, such as through the "Validate" and "Wait for Validation" features described in Defendants' technical literature, as disclosed in the '890 Patent.

65.    Defendants will, on information and belief, continue to directly infringe the '890 Patent unless enjoined.

66.    To the extent Defendants' Infringing Products, without more, do not directly infringe at least claim 6 of the '890 Patent, Defendants contribute to infringement of the same under 35 U.S.C. § 271(c) inasmuch as the Infringing Products offered for sale and sold by Defendants are each a component of a patented machine or an apparatus used in practicing a patented process, constituting a material part of SRI's invention, knowing the same to be especially made or especially adapted for use in infringement of the '890 Patent.

67.    Defendants will, on information and belief, continue to contribute to infringement of the '890 Patent unless enjoined.

68.    Defendants actively encourage their customers to use Defendants' Infringing Products in an infringing manner.  For example, Defendants' website is replete with written directions, screenshots, and videos instructing users on how to use the Infringing Products in an infringing manner.  Defendants' website also touts the identities of customers who use the Infringing Products,

each of whom is a direct infringer inasmuch as they use the Infringing Products in the infringing manner as instructed by Defendants.

69.     Defendants' acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

70.     Defendants have been aware of the '890 Patent since at least as early as the filing of the instant Complaint.

71.     Upon information and belief, and particularly by way of the detailed documentation instructing users on how to use the Infringing Products in an infringing manner, Defendants have encouraged this infringement with knowledge of the '890 Patent and with a specific intent to cause their customers and distributors to infringe.

72.     Defendants will, on information and belief, continue to induce infringement of the '890 Patent unless enjoined.

73.     Defendants' direct infringement and their actions inducing others to infringe have irreparably harmed SRI.

74.     Defendants will, on information and belief, continue to irreparably harm SRI unless enjoined.

75.     Pursuant to 35 U.S.C. § 284, SRI is entitled to damages adequate to compensate for the infringement but in no event less than a reasonable royalty.

76.     Defendants' infringement has been and is willful and, pursuant to 35 U.S.C. § 284, SRI is entitled to treble damages.

77.     This case is "exceptional" within the meaning of 35 U.S.C. § 285, and SRI is entitled to an award of attorneys' fees.

## COUNT IV – INFRINGEMENT OF THE '585 PATENT

78.     SRI re-alleges and incorporates the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

79.     SRI is the assignee and owner of all right, title, and interest in and to the '585 Patent, which was issued on July 23, 2013.  A true and correct copy of the '585 Patent is attached hereto as Exhibit D.

singer bea LLP

80.     The '585 Patent addresses an invention for testing websites.  The disclosed innovation tests many facets of the website's experience and operation, including by providing novel approaches to creating, storing, and executing test scripts capable of accurately testing AJAX web page elements.

81.     SRI has the exclusive right to make, use, sell, and offer to sell any product embodying the '585 Patent throughout the United States, and to import any product embodying the '585 Patent into the United States.

82.     SRI has commercially exploited the '585 Patent by making, marketing, selling, and using products covered by the '585 Patent, including its popular eValid™ software products.

83.     Upon information and belief, Dynatrace has had knowledge of SRI and its products embodying the inventions claimed in the '175 Patent at least as early as December 27, 2010.

84.     At all relevant times, SRI provided public notice of the '585 Patent by properly marking its products under 35 U.S.C. § 287(a).

85.     Upon information and belief, Dynatrace has had knowledge of the '585 Patent at least as early as July 23, 2013.

86.     Defendants have been, and are currently, directly infringing at least claim 1 of the '585 Patent in violation of 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, and offering for sale Defendants' Infringing Products, which, as set forth in documentation available on Defendants' website, consist of non-transitory computer readable media—both as maintained in Defendants' files and those of the users to whom Defendants offer and sell the Infringing Products—including at least computer program code for providing a test enabled web browser, said medium comprising computer program code for providing web browsing capabilities; computer program code for testing capabilities of a website hosted by a server and accessible to a computer via a network; wherein the computer program code for testing capabilities of the website includes computer program code configured to receive a synchronization check from a user using the test enabled web browser, such as through use of the testing component of the Infringing Products, to insert the synchronization check into a test script for testing at least one webpage of the website, the test script being separate from the at least one webpage being tested, the at least one webpage being tested including AJAX programming, and to automatically synchronize

playback of the test script using at least the synchronization check to maintain the test enabled browser's state with respect to the AJAX programming by means of the synchronization check in the test script to a DOM associated with the website; wherein the synchronization check in the test script and web browsing activities provided by the web browsing capabilities are able to separately access the DOM associated with the at least one webpage of the website; and wherein the synchronization check is inserted into the test script as at least one command, and the at least one command operates, when executed, to find a current index of at least one DOM element of the at least one webpage based on a specified property name and/or property value, and (i) submit a named event to the at least one DOM element of the at least one webpage having the current index, or (ii) insert or verify a value in the at least one DOM element of the at least one webpage having the current index, such as through the "Validate" and "Wait for Validation" features described in Defendants' technical literature, as disclosed in the '585 Patent.

87.     Defendants will, on information and belief, continue to directly infringe the '585 Patent unless enjoined.

88.     To the extent Defendants' Infringing Products, without more, do not directly infringe at least claim 1 of the '585 Patent, Defendants contribute to infringement of the same under 35 U.S.C. § 271(c) inasmuch as the Infringing Products offered for sale and sold by Defendants are each a component of a patented machine or an apparatus used in practicing a patented process, constituting a material part of SRI's invention, knowing the same to be especially made or especially adapted for use in infringement of the '585 Patent.

89.     Defendants will, on information and belief, continue to contribute to infringement of the '585 Patent unless enjoined.

90.     Defendants actively encourage their customers to use Defendants' Infringing Products in an infringing manner.  For example, Defendants' website is replete with written directions, screenshots, and videos instructing users on how to use the Infringing Products in an infringing manner.  Defendants' website also touts the identities of customers who use the Infringing Products, each of whom is a direct infringer inasmuch as they use the Infringing Products in the infringing manner as instructed by Defendants.

91.     Defendants' acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

92.     Defendants will, on information and belief, continue to induce infringement of the '585 Patent unless enjoined.

93.     Defendants have been aware of the '585 Patent since at least as early as the filing of the instant Complaint.

94.     Upon information and belief, and particularly by way of the detailed documentation instructing users on how to use the Infringing Products in an infringing manner, Defendants have encouraged this infringement with knowledge of the '585 Patent and with a specific intent to cause their customers and distributors to infringe.

95.     Defendants' direct infringement, contributory infringement, and inducement of infringement have irreparably harmed SRI.

96.     Defendants will, on information and belief, continue to irreparably harm SRI unless enjoined.

97.     Pursuant to 35 U.S.C. § 284, SRI is entitled to damages adequate to compensate for the infringement but in no event less than a reasonable royalty.

98.     Defendants' infringement has been and is willful and, pursuant to 35 U.S.C. § 284, SRI is entitled to treble damages.

99.     This case is "exceptional" within the meaning of 35 U.S.C. § 285, and SRI is entitled to an award of attorneys' fees.

## COUNT V – INFRINGEMENT OF THE '493 PATENT

100.    SRI re-alleges and incorporates the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

101.    SRI is the assignee and owner of all right, title, and interest in and to the '493 Patent, which was issued on February 11, 2014.  A true and correct copy of the '493 Patent is attached hereto as Exhibit E.

102.    The '493 Patent addresses an invention for testing websites.  The disclosed innovation tests many facets of the website's experience and operation, including by providing novel approaches

to creating, storing, and executing test scripts using website elements as opposed to the previously disclosed use of recording test scripts based upon user actions only.

103.    SRI has the exclusive right to make, use, sell, and offer to sell any product embodying the '493 Patent throughout the United States, and to import any product embodying the '493 Patent into the United States.

104.    SRI has commercially exploited the '493 Patent by making, marketing, selling, and using products covered by the '493 Patent, including its popular eValid™ software products.

105.    Upon information and belief, Dynatrace has had knowledge of SRI and its products embodying the inventions claimed in the '175 Patent at least as early as December 27, 2010.

106.    At all relevant times, SRI provided public notice of the '493 Patent by properly marking its products under 35 U.S.C. § 287(a).

107.    Upon information and belief, Dynatrace has had knowledge of the '493 Patent at least as early as February 11, 2014.

108.    Defendants have been, and are currently, directly infringing at least claim 1 of the '493 Patent in violation of 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, and offering for sale Defendants' Infringing Products, which, as set forth in documentation available on Defendants' website, consist of non-transitory computer readable media—both as maintained in Defendants' files and those of the users to whom Defendants offer and sell the Infringing Products—including at least computer program code stored therein for providing a test-enabled browser for testing a website residing on a network, said medium comprising computer program code for interfacing with web browsing components, the web browsing components including DOM access methods; computer program code for accessing a website to be tested; computer program code for rendering and examining at least one web page of the website so as to extract details of elements of the web page, and store the details of the web page in a recorded script, such as via the testing component of the Infringing Products; computer program code for selecting a validation test to be performed, such as the "Validate" and "Wait for Validation" features described in Defendants' technical documentation; and computer program code for performing the validation test using at least one of the DOM access methods of the web browsing components, wherein during

the validation test, the at least one web page is newly rendered and details of elements for the at least one web page as newly rendered are accessed via the at least one of the DOM access methods and compared to the stored details in the recorded script, as disclosed in the '493 Patent.

109.    Defendants will, on information and belief, continue to directly infringe the '493 Patent unless enjoined.

110.    To the extent Defendants' Infringing Products, without more, do not directly infringe at least claim 1 of the '493 Patent, Defendants contribute to infringement of the same under 35 U.S.C. § 271(c) inasmuch as the Infringing Products offered for sale and sold by Defendants are each a component of a patented machine or an apparatus used in practicing a patented process, constituting a material part of SRI's invention, knowing the same to be especially made or especially adapted for use in infringement of the '493 Patent.

111.    Defendants will, on information and belief, continue to contribute to infringement of the '493 Patent unless enjoined.

112.    Defendants actively encourage their customers to use Defendants' Infringing Products in an infringing manner.  For example, Defendants' website is replete with written directions, screenshots, and videos instructing users on how to use the Infringing Products in an infringing manner.  Defendants' website also touts the identities of customers who use the Infringing Products, each of whom is a direct infringer inasmuch as they use the Infringing Products in the infringing manner as instructed by Defendants.

113.    Defendants have been aware of the '493 Patent since at least as early as the filing of the instant Complaint.

114.    Upon information and belief, and particularly by way of the detailed documentation instructing users on how to use the Infringing Products in an infringing manner, Defendants have encouraged this infringement with knowledge of the '493 Patent and with a specific intent to cause their customers and distributors to infringe.

115.    Defendants' acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

116.    Defendants will, on information and belief, continue to induce infringement of the '493 Patent unless enjoined.

117.    Defendants' direct infringement, contributory infringement, and inducement of infringement have irreparably harmed SRI.

118.    Defendants will, on information and belief, continue to irreparably harm SRI unless enjoined.

119.    Pursuant to 35 U.S.C. § 284, SRI is entitled to damages adequate to compensate for the infringement but in no event less than a reasonable royalty.

120.    Defendants' infringement has been and is willful and, pursuant to 35 U.S.C. § 284, SRI is entitled to treble damages.

121.    This case is "exceptional" within the meaning of 35 U.S.C. § 285, and SRI is entitled to an award of attorneys' fees.

## COUNT VI – INFRINGEMENT OF THE '491 PATENT

122.    SRI re-alleges and incorporates the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

123.    SRI is the assignee and owner of all right, title, and interest in and to the '491 Patent, which was issued on March 17, 2015.  A true and correct copy of the '491 Patent is attached hereto as Exhibit F.

124.    The '491 Patent addresses an invention for testing websites.  The disclosed innovation tests many facets of the website's experience and operation, including by providing novel approaches to creating, storing, and executing test scripts using website elements as opposed to the previously disclosed use of recording test scripts based upon user actions only.

125.    SRI has the exclusive right to make, use, sell, and offer to sell any product embodying the '491 Patent throughout the United States, and to import any product embodying the '491 Patent into the United States.

126.    SRI has commercially exploited the '491 Patent by making, marketing, selling, and using products covered by the '491 Patent, including its popular eValid™ software products.

127.     Upon information and belief, Dynatrace has had knowledge of SRI and its products embodying the inventions claimed in the '175 Patent at least as early as December 27, 2010.

128.     At all relevant times, SRI provided public notice of the '491 Patent by properly marking its products under 35 U.S.C. § 287(a).

129.     Upon information and belief, Dynatrace has had knowledge of the '491 Patent at least as early as March 17, 2015.

130.     Defendants have been, and are currently, directly infringing at least claim 1 of the '491 Patent in violation of 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, and offering for sale Defendants' Infringing Products, which, as set forth in documentation available on Defendants' website, consist of non-transitory computer readable media—both as maintained in Defendants' files and those of the users to whom Defendants offer and sell the Infringing Products—including at least computer program code for providing a test enabled web browser, said medium comprising computer program code for testing capabilities of a website hosted by a server and accessible to the computer via a network, wherein the computer program code for testing capabilities of the website provides playback of one or more test scripts, such as those generated via the testing component of the Infringing Products, the one or more test scripts being separate from the website; wherein the computer program code for testing capabilities is configured to keep track of specific DOM element property name and/or values within a webpage of the website being tested to provide support for playback of one or more test scripts that were recorded from and/or are played back via the test enabled web browser; wherein the use of the named DOM element property values provides support for synchronizing playback of the one or more test scripts; wherein at least one or more test scripts operate, when performed, to find a current index of at least one DOM element of the webpage based on a specified property name and/or property value, and insert or verify a name and/or value in the at least one DOM element of the webpage having the current index, such as via the "Validate" and "Wait for Validation" features described in Defendants' technical documentation; and wherein the computer code for testing capabilities of the website performs the one or more test scripts using one or more programmatic processes that are separate from the web page of the website being tested, as disclosed in the '491 Patent.

singer bea LLP

131.     Defendants will, on information and belief, continue to directly infringe the '491 Patent unless enjoined.

132.     To the extent Defendants' Infringing Products, without more, do not directly infringe at least claim 1 of the '491 Patent, Defendants contribute to infringement of the same under 35 U.S.C. § 271(c) inasmuch as the Infringing Products offered for sale and sold by Defendants are each a component of a patented machine or an apparatus used in practicing a patented process, constituting a material part of SRI's invention, knowing the same to be especially made or especially adapted for use in infringement of the '491 Patent.

133.     Defendants will, on information and belief, continue to contribute to infringement of the '491 Patent unless enjoined.

134.     Defendants actively encourage their customers and distributors to use, sell, and offer for sale Defendants' Infringing Products, which such users and distributors do, resulting in direct infringement.  For example, Defendants' website is replete with written directions, screenshots, and videos instructing users on how to use the Infringing Products in an infringing manner.  Defendants' website also touts the identities of customers who use the Infringing Products, each of whom is a direct infringer inasmuch as they use the Infringing Products in the infringing manner as instructed by Defendants.

135.     Defendants have been aware of the '491 Patent since at least as early as the filing of the instant Complaint.

136.     Upon information and belief, and particularly by way of the detailed documentation instructing users on how to use the Infringing Products in an infringing manner, Defendants have encouraged this infringement with knowledge of the '491 Patent and with a specific intent to cause their customers and distributors to infringe.

137.     Defendants' acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

138.     Defendants will, on information and belief, continue to induce infringement of the '491 Patent unless enjoined.

139.    Defendants' direct infringement, contributory infringement, and inducement of infringement have irreparably harmed SRI.

140.    Defendants will, on information and belief, continue to irreparably harm SRI unless enjoined.

141.    Pursuant to 35 U.S.C. § 284, SRI is entitled to damages adequate to compensate for the infringement but in no event less than a reasonable royalty.

142.    Defendants' infringement has been and is willful and, pursuant to 35 U.S.C. § 284, SRI is entitled to treble damages.

143.    This case is "exceptional" within the meaning of 35 U.S.C. § 285, and SRI is entitled to an award of attorneys' fees.

## DEMAND FOR JURY TRIAL

SRI hereby demands a trial by jury of all issues so triable under Federal Rule of Civil Procedure 38(b).

## PRAYER FOR RELIEF

WHEREFORE, SRI respectfully requests that this Court:

A.    Find that United States Patent No. 7,757,175 is valid and enforceable against Defendants;

B.    Find that Defendants have infringed and are infringing United States Patent No. 7,757,175;

C.    Permanently enjoin Defendants, their officers, agents, servants, employees, and those persons acting in active concert or in participation therewith from infringing United States Patent No. 7,757,175;

D.    Award SRI damages sufficient to compensate it for Defendants' past and future infringement of United States Patent No. 7,757,175, together with costs and prejudgment interest, pursuant to 35 U.S.C. § 284;

E.    Find that United States Patent No. 8,327,271 is valid and enforceable against Defendants;

F.  Find that Defendants have infringed and are infringing United States Patent No. 8,327,271;

G.  Permanently enjoin Defendants, their officers, agents, servants, employees, and those persons acting in active concert or in participation therewith from infringing United States Patent No. 8,327,271;

H.  Award SRI damages sufficient to compensate it for Defendants' past and future infringement of United States Patent No. 8,327,271, together with costs and prejudgment interest, pursuant to 35 U.S.C. § 284;

I.  Find that United States Patent No. 8,392,890 is valid and enforceable against Defendants;

J.  Find that Defendants have infringed and are infringing United States Patent No. 8,392,890;

K.  Permanently enjoin Defendants, their officers, agents, servants, employees, and those persons acting in active concert or in participation therewith from infringing United States Patent No. 8,392,890;

L.  Award SRI damages sufficient to compensate it for Defendants' past and future infringement of United States Patent No. 8,392,890, together with costs and prejudgment interest, pursuant to 35 U.S.C. § 284;

M.  Find that United States Patent No. 8,495,585 is valid and enforceable against Defendants;

N.  Find that Defendants have infringed and are infringing United States Patent No. 8,495,585;

O.  Permanently enjoin Defendants, their officers, agents, servants, employees, and those persons acting in active concert or in participation therewith from infringing United States Patent No. 8,495,585;

P.  Award SRI damages sufficient to compensate it for Defendants' past and future infringement of United States Patent No. 8,495,585, together with costs and prejudgment interest, pursuant to 35 U.S.C. § 284;

Q.    Find that United States Patent No. 8,650,493 is valid and enforceable against Defendants;

R.    Find that Defendants have infringed and are infringing United States Patent No. 8,650,493;

S.    Permanently enjoin Defendants, their officers, agents, servants, employees, and those persons acting in active concert or in participation therewith from infringing United States Patent No. 8,650,493;

T.    Award SRI damages sufficient to compensate it for Defendants' past and future infringement of United States Patent No. 8,650,493, together with costs and prejudgment interest, pursuant to 35 U.S.C. § 284;

U.    Find that United States Patent No. 8,984,491 is valid and enforceable against Defendants;

V.    Find that Defendants have infringed and are infringing United States Patent No. 8,984,491;

W.    Permanently enjoin Defendants, their officers, agents, servants, employees, and those persons acting in active concert or in participation therewith from infringing United States Patent No. 8,984,491;

X.    Award SRI damages sufficient to compensate it for Defendants' past and future infringement of United States Patent No. 8,984,491, together with costs and prejudgment interest, pursuant to 35 U.S.C. § 284;

Y.    Order an accounting of damages from Defendants' infringement;

Z.    Award SRI enhanced damages, up to and including trebling SRI's damages, pursuant to 35 U.S.C. § 284, for Defendants' willful infringement of the Patents-in-Suit;

AA.   Award SRI its reasonable attorney fees and costs of suit pursuant to 35 U.S.C. § 285 due to the exceptional nature of this case, or as otherwise permitted by law; and

BB.   Award SRI such other or additional relief as the Court deems just and proper.

//

//

1   Date: January 10, 2018                    Respectfully submitted,

2                                             SINGER BEA LLP

3

4                                             By: _____

5                                                 Benjamin L. Singer
                                                  Evan Budaj
6                                                 *Attorneys for Plaintiff Software Research, Inc.*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28