1 | SINGER / BEA LLP
    Benjamin L. Singer (Bar. No. 264295)
2 |   bsinger@singerbea.com
    Evan N. Budaj (Bar No. 271213)
3 |   ebudaj@singerbea.com
  601 Montgomery Street, Suite 1950
4 | San Francisco, California  94111
  Telephone:    (415) 500-6080
5 | Facsimile:    (415) 500-6080
  *Attorneys for Plaintiff Software Research, Inc.*

*Attorneys for Defendant Dynatrace, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SOFTWARE RESEARCH, INC., | CASE NO. 3:18-CV-232-EMC |
|       Plaintiff, | **JOINT CASE MANAGEMENT STATEMENT AND FED. R. CIV. P. 26(F) REPORT** |
| v. | |
| DYNATRACE, INC. and DOES 1 through 10, | Date Filed:  January 10, 2018 |
|       Defendants. | CMC Date:  June 21, 2018 |
| | Trial Date:  None set |

Plaintiff Software Research, Inc. ("Plaintiff" or "SRI") and Defendant Dynatrace, Inc. ("Defendant" or "Dyantrace") (collectively, "the Parties") submit this Joint Case Management Statement and Fed. R. Civ. P. 26(f) Report, pursuant to the Court's Order Setting Initial Case Management Scheduling Order (Dkt. 17); Clerk's Notice (Dkt. 18); Standing Order for All Judges of the Northern District of California; Federal Rule of Civil Procedure 26(f), and Civil Local Rule 16-9.

## 1. JURISDICTION & SERVICE

This is an action for pecuniary and injunctive relief for Defendant's alleged infringement of United States Patent Nos. 7,757,175; 8,327,271; 8,392,890; 8,495,585; 8,650,493; and 8,984,491 (collectively, the "Asserted Patents") arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*  (*See generally* Dkt. 1.)  This Court has subject matter jurisdiction over Plaintiff's patent claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

SRI served Defendant on or about January 18, 2018.  (*See* Dkt. 14.)  While the true identities of Defendants Does 1 through 10, inclusive, are presently unknown to SRI, SRI is informed and believes that such fictionally named Doe Defendants are directors, officers, employees, representatives, and/or agents of Defendant who participated and/or are currently participating in Defendant's infringement.  SRI will seek leave to amend its complaint to name such individuals when their true identities become known through discovery or further investigation.

No issues exist regarding personal jurisdiction or venue.

## 2. FACTS

SRI's Position:

As the global economy has moved away from traditional brick and mortar business and into the digital age, a company's fortunes can rise and fall with the functionality and performance of its websites.  An enterprise can lose millions in revenue if its website is down even briefly, its shopping cart or checkout processes are malfunctioning, or its pages fall victim to any of a number of other glitches arising from anything from simple mistake to sophisticated malware.  That internet infrastructure, programming languages, and other website technology continue to grow by leaps and bounds at an ever-increasing pace makes identifying performance issues—already a tricky exercise—more complicated virtually by the day.

SRI, a San Francisco tech company formed in 1978 by Edward F. Miller, Ph.D., exists to develop, refine, and commercialize website performance and functionality testing solutions that can keep up with the relentless advance of internet technology.  In the decades since founding SRI, Dr. Miller has personally conceived of, developed, and patented a number of revolutionary innovations that dramatically advanced the start of the art of website performance testing.  He is considered by many as a luminary in the field.

The Asserted Patents issued to Dr. Miller (with SRI as his assignee) only after the United States Patent Office undertook a rigorous review of the hundreds of pieces of prior art cited in Dr. Miller's applications.  Further confirming the significance of SRI's intellectual property as foundational to the modern website testing industry, the Asserted Patents have been forward-cited nearly 200 times since issuance.  Furthermore, as SRI has explained to Dynatrace, while SRI did sell products prior to the critical date of October 31, 1999, no product marketed and sold prior to that date—regardless of the name SRI gave that product—embodied or anticipated the patented inventions.

Thousands of customers—including Google, American Express, Intel, Microsoft, Cisco, IBM, Lockheed Martin, Princeton University, and Verizon—have purchased and employed SRI's offerings embodying one or more of the Asserted Patents, including but not limited to eValid, in order to ensure that their websites function properly and continue to generate revenue.  At its peak, SRI generated millions in annual revenues.  But since that time, rampant infringement has decimated SRI's business, leaving SRI with no choice but to enforce its right to keep others from using Dr. Miller's inventions to compete against SRI.

Defendant Dynatrace offers website testing products, such as Dynatrace Performance Management, that infringe each of the Asserted Patents.  Although these issues are addressed in further detail in SRI's Opposition to Dynatrace's Motion to Dismiss, SRI notes that Dyantrace apparently does not publish a listing of its "products," instead choosing to market its offerings via a website that vaguely attributes various functionalities to "Dynatrace Performance Management" or Dynatrace's "Digital Performance Management."  Nonetheless, SRI has included both in its operative complaint and its infringement contentions citations to specific functionality of Dynatrace's

offerings, including numerous pages on Dynatrace's website that show specific functionality of a computer program, along with screenshots of that program as it is run.  SRI assumes that Dynatrace should be able to view those screenshots and determine the name of the "product" from which they are taken, notwithstanding that such information does not appear to be available on Dynatrace's website.

Dynatrace's Position:

In essence, SRI is a non-practicing entity whose primary business is patent litigation, suing multiple companies to extract licensing fees.  SRI has mirrored its infringement allegations over the years, and the complaint against Dynatrace is no exception.  Since 2011, SRI has sued multiple companies including Sencha, Inc.; Seapine Software, Inc. Dotcom-Monitor, Inc.; Developer Express, Inc.; Inflectra Corporation; Ranorex Inc.; InfoGenius.com, Inc., d/b/a Infogenius, Inc.; Uptrends LLC; Hewlett-Packard Company and; Microsoft Corporation.

The patents so called invention is an antiquated approach to testing websites that companies no longer use in the modern era.  Although Plaintiff refuses to identify a specific product or category of products that it alleges infringes, Dynatrace has deduced that this case could be about synthetic website testing.  To assist in its investigation, Dynatrace asked if Plaintiff would at least describe its allegations as limited to synthethic website testing, but Plaintiff refused.  Instead, Plaintiff has asked that Dynatrace identify every product it sells and explain how it works and Plaintiff will decide if it is an infringing product or not.  This is of course, not how it works.  To add to the difficulty here, Dynatrace is not a traditional technology company.  Dynatrace is a consortium of various software businesses owned by private equity.  Therefore, Plaintiff's failure to identify a single accused product or category of products makes Dynatrace's investigation even more difficult.  In an act of good faith, Dynatrace advised Plaintiff that Dynatrace products that involve synthetic website testing were acquired from other companies years ago and are no longer being sold.  This unfortunately has not moved the needle and SRI continues to refuse to categorize its patents or its allegations.

While Dynatrace continues to make sense of Plaintiff's allegations with the limited information provided, various roads seem to point to the invalidity of at least some of the asserted

patents based on SRI's products sold at least one year prior to the relevant filing date.  Evidence uncovered to date seems to indicate that SRI sold a product, CAPBAK/Web [IE] Ver. 1.5 at least as early as Jul. 23,1999, at least one year before the earliest priority date Oct. 31, 2000 of three of the asserted patents, the '175, 271 , and 493 Patents.  Dynatrace believes SRI was aware of this validity issue prior to filing suit.

> While these issues will be further explored in the litigation, it does not appear based on the information exchanged during the previous litigations, that SRI had an objectively reasonable basis to file this lawsuit in light of the prior art.  It appears SRI has chosen instead to ignore invalidity, and proceed with the case anyway.  Dynatrace also does not believe SRI has conducted an adequate pre-filing investigation. SRI concedes that there is not sufficient information on Dynatrace's website to identify an accused product but it proceeded anyway, pointing to Dynatrace Performance Management,  which is a marketing term.  SRI also refuses to identify a technology category its patents cover and instead relies on generic functionalities such as  "scripting," "recording," and "playback" and expects Dynatrace to simply identify every product, service, or functionality it engages in to determine its accused products.  It cannot be that a plaintiff can simply point to certain generic functionalities on a website to then get the green light to conduct a fishing expedition.

3. **LEGAL ISSUES**

> The Parties anticipate that the key factual and legal issues in this action will be:

> A.   The meaning and scope of the terms recited in the claims of the Asserted Patents;

> B.   Whether Defendant has directly infringed, either literally or under the doctrine of equivalents, any claim of any of the Asserted Patents;

> C.   Whether Defendant has induced others to infringe and/or contributed to others' infringement of the Asserted Patents;

> D.   Whether Plaintiff is entitled to injunctive relief;

> E.   The amount and type of damages awardable to Plaintiff;

> F.   Whether either party is entitled to attorney's fees pursuant to 35 U.S.C. § 285; and

> G.   The validity and enforceability of the Asserted Patents under various provisions of the patent code, including whether Plaintiff's pre-suit conduct creates

additional defenses to enforcement or validity of the patents in suit; and

H.    Whether Plaintiff has conducted an adequate Rule 11 investigation.[1]

I.    Whether some or all of Plaintiff's patents are invalid because under the on sale
bar legal doctrine;

J.    Whether Mr. Miller, the sole inventor on the patents in suit, committed fraud on
the USPTO by submitting false declarations during the prosecution history of at
least some of the patents in suit.

**4.    MOTIONS**

Dynatrace has filed a motion to dismiss for failure to state a claim, which is currently
pending.  The parties anticipate filing any necessary discovery motions, motions for summary
judgment regarding infringement and validity, and pre-trial motions as appropriate.

**5.    AMENDMENT OF PLEADINGS**

SRI will seek leave to amend its Complaint to reflect the true identities of Defendants Does 1
through 10, inclusive, when they become known to SRI through discovery and/or further
investigation.  SRI proposes November 9, 2018, for the deadline to amend the pleadings.  Dynatrace
proposes June 30, 2018.

**6.    EVIDENCE PRESERVATION**

The Parties certify that they have reviewed the Guidelines Relating to the Discovery of
Electronically Stored Information ("ESI Guidelines"), and confirm that they met and conferred
pursuant to Fed. R. Civ. P. 26(f) and that each of them has implemented a litigation hold.

**7.    DISCLOSURES**

SRI's Position: SRI served its FRCP 26(a)(1) disclosures on April 14, 2018.  Despite the fact
that the parties held their FRCP 26(f) conference on March 27, 2018, and that FRCP 26(a)(1) requires
that a "party must make the initial disclosures at or within 14 days after the parties' Rule 26(f)
conference unless a different time is set by stipulation or court order, or unless a party objects during
the conference that initial disclosures are not appropriate in this action and states the objection in the

---

[1] Dynatrace has not accused SRI of violating Rule 11 (aside from the vague, and meritless, insinuations it makes in this document), nor has it served on SRI any Motion for Sanctions pursuant to Rule 11(c)(2).

proposed discovery plan," Dynatrace did not serve its FRCP 26(a)(1) disclosures until June 8, 2018. Even then, Dynatrace's initial disclosures do not identify a single Dynatrace employee or witness knowledgeable about the issues raised in SRI's Complaint.  SRI did not grant Dynatrace an extension to serve its initial disclosures, except that in its first draft of this Joint Case Management Statement, SRI proposed a due date of initial disclosures of April 13, 2018.

Dynatrace's Position:  As discussed in its pending motion to dismiss, Dynatrace does not have sufficient information to identify relevant witnesses and documents.  Although Dynatrace has repeatedly requested further clarification from Plaintiff to confirm whether the patents are limited to synthetic web testing, Plaintiff has refused.  Instead, Plaintiff points to generic terms such as scripting, recording, and playback, which does nothing to assist Dynatrace in its investigation. Moreover, SRI had granted Dynatrace an extension.  Nonetheless, Dynatrace served its initial disclosures on June 8, 2018.

**8.   DISCOVERY**

The Parties anticipate discovery relevant to infringement, willfulness, damages, validity, and enforceability.   SRI has served 48 requests for production and 8 interrogatories with subparts directed at every conceivable issue in the case.  Dynatrace has served 5 requests for production directed at certain product prior art solely in SRI's possession.

**Protective order**: The Parties will meet and confer on a proposed Stipulated Protective Order, which they will submit at a time set by the Court.

SRI's position:

SRI suggests that the timing of and limits on discovery be generally governed by the Federal Rules of Civil Procedure and the Local Rules of this Court.  Regarding Dynatrace's request to bifurcate discovery, SRI is generally agreeable to, prior to mediation, focusing discovery on matters necessary to facilitate mediation.  However, SRI does not agree to Dynatrace's request to essentially stay this case by not addressing discovery at all until after the pleadings are finalized.  Discovery has already opened by virtue of the parties' FRCP 26(f) conference, *see* FRCP 26(d)(1), and should not now be stayed.

1       Regarding the remainder of Dynatrace's comments below, pursuant to the this Court's

2  Standing Order on Discovery, the parties have contemporaneously submitted a joint letter brief

3  outlining a discovery dispute that is ripe for adjudication.  According to that Order, SRI has limited

4  its discussion of that discovery dispute to half of the available space in that three-page letter.

5       <u>Dynatrace's position</u>

6       Dynatrace suggests that the parties meet and confer regarding an appropriate discovery plan

7  after the pleadings are finalized.  The scope of discovery could be substantially impacted by what

8  patent claims remain, if any.

9       In the alternative, Dynatrace suggests that discovery be bifurcated to focus initially on

10  information that would facilitate settlement in light of the upcoming mediation.  It would be highly

11  inefficient to proceed with patent discovery—including prior art searches, exchanges of contentions,

12  expert discovery, and claim construction when the parties are headed to mediation.  Nonetheless,

13  despite SRI's agreement to limit discovery to areas to assist mediation, SRI has pushed ahead with

14  overlybroad, unreasonable and burdensome discovery, that is not proportional to the demands of the

15  case.

16       Pursuant to this Court' standing order, Fed. R. Civ. P. 16 and 26(f), Dynatrace further

17  addresses proposed limits on discovery, bifurcation and discovery disputes.  Dynatrace has been

18  forced to make this request to limit or narrow discovery to aid in mediation in part based on SRI's

19  scorched earth litigation conduct to date.  As the Court is already aware, SRI served its infringement

20  contentions early, attempting to trigger prematurely various patent local rule disclosures such as

21  invalidity contentions.  The Court extended Dynatrace's time to serve its invalidity contentions and

22  make the accompanying local rule disclosures, 90 days from the date it filed its response to SRI's

23  Amended Complaint – i.e. August 1, 2018.  The Court did so in part, because Plaintiff did not

24  demonstrate any urgent need to advance the schedule.  SRI served on the same day as its

25  infringement contentions, 48 requests for production and 8 interrogatories with subparts that exceed

26  the number permitted by federal rule.   Many of the requests/interrogatories overlap with Dynatrace's

27

28

Rule 3-3 and 3-4 disclosures[2], which is specifically prohibited by Patent Local Rule 2-5(a), (c) and (d) and this Court's order delaying such production.[3]   For example, RFP Nos. 8, 13, 14, 15, 33, 40 relate to prior art and invalidity. *See eg.* (RFP No. 8 "ALL DOCUMENTS regarding anything YOU alleged to be prior art to any of the ASSERTED PATENTS.;")(RFP No. 14 "ALL DOCUMENTS RELATING TO your contention that the ASSERTED PATENTS are invalid;)(RFP No. 33 All DOCUMENTS and THINGS that YOU understand or believe to support YOUR contentions, if any, that any ASSERTED PATENT is invalid).; *see also* RFP No 40  (all documents relating to any investigation to show good faith basis for the opinion that you do no infringe or the patents are invalid;) RFP 41 ("All DOCUMENTS and THINGS relating to all communications exchanged between YOU and any attorney relating to any ASSERTED PATENT, including all opinions and advice of counsel on which YOU intend to rely relating to the infringement, validity,

---

[2] Patent Local Rule 3-4 states in relevant part: With the "Invalidity Contentions," the party opposing a claim of patent infringement shall produce or make available for inspection and copying:

1. **(a)** Source code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified by the patent claimant in its Patent L.R. 3-1(c) chart;
2. **(b)** A copy or sample of the prior art identified pursuant to Patent L.R. 3-3(a) which does not appear in the file history of the patent(s) at issue. To the extent any such item is not in English, an English translation of the portion(s) relied upon shall be produced;
3. **(c)** All agreements that the party opposing infringement contends are comparable to a license that would result from a hypothetical reasonable royalty negotiation;
4. **(d)** Documents sufficient to show the sales, revenue, cost, and profits for accused instrumentalities identified pursuant to Patent L.R. 3-1(b) for any period of alleged infringement; and
5. **(e)** All agreements that may be used to support the party denying infringement's damages case.

[3] Patent Local Rule 2-5 states in relevant part:
A party may object, however, to responding to the following categories of discovery requests (or decline to provide information in its initial disclosures under Fed. R. Civ. P. 26(a)(1)) on the ground that they are premature in light of the timetable provided in the Patent Local Rules:

1. **(a)** Requests seeking to elicit a party's claim construction position;
2. **(b)** Requests seeking to elicit from the patent claimant a comparison of the asserted claims and the accused apparatus, product, device, process, method, act, or other instrumentality;
3. **(c)** Requests seeking to elicit from an accused infringer a comparison of the asserted claims and the prior art; and
4. **(d)** Requests seeking to elicit from an accused infringer the identification of any advice of counsel, and related documents.
5. Where a party properly objects to a discovery request (or declines to provide information in its initial disclosures under Fed. R. Civ. P. 26(a)(1)) as set forth above, that party shall provide the requested information on the date on which it is required to be provided to an opposing party under these Patent Local Rules or as set by the Court, unless there exists another legitimate ground for objection.

unenforceability, or scope of any ASSERTED PATENT.)  Nonetheless, despite the patent local rules and this Court's order, SRI continues to forge ahead.

Moreover, SRI served requests such as RFP No. 10 "ALL DOCUMENTS RELATING TO and/or referencing SRI" and RFP No. 48, "To the extent not called for by any preceding paragraph, all other DOCUMENTS and THINGS relating to any claim or defense in this Lawsuit."  These requests are inappropriate for a variety of reasons including that they have no limit on breadth or temporal scope and call for mental impressions of counsel,  particularly since Dynatrace has not yet answered.  *See also*  RFP No. 34 (all documents concerning equitable defenses.); RFP No. 39 (all documents concerning your contentions that you do not infringe.)

Likewise, many of the categories taken in the best of light are not needed for mediation such as RFP No. 18 (organizational charts going six years back,) RFP No. 25 (training materials;) RFP No. (licensing policies); RPF No. 37(patent review policies); RFP 46 (document retention policies evidencing destruction of evidence;RFP 47 (all communications with third parties concerning this lawsuit;) RFP Nos. 1 and 2 (source code); RFP No. 11 (all documents relating to the value or importance of website testing;) RFP No. 17 (documents sufficient to identify persons or entities involved with the accused products any where in the world;) RFP No. 19 (all contracts with third parties involving the accused products any where in the world;) RFP 20 (all documents relating to patent marking;) RFP Nos. 23-24 and (marketing, advertising, strategic plans;) Rog Nos. 7-8 ("patent marking of Dynatrace products and licensing of website testing products;)

Nothwithstanding the above, Dynatrace has a more practical problem. Since SRI has not identified a single accused product, or will not agree to define the technology at issue as synthetic website testing, Dynatrace is left to guess as to what SRI is requesting.

SRI's contention interrogatories fare no better.  *See e.g* Rog Nos. 3 and 5 (non-infringement contentions;) and Rog No. 4 (damages contentions and other reasonable royalty analysis); Rog No. 6 (expert reports or investigations concerning economic value).  Once again, without any justification, SRI is attempting to push this case forward prematurely.  Courts in this district frown at premature

contention discovery.  *See e.g.,  24/7 Customer, Inc. v. LivePerson, Inc.*, No. 15-cv-02897-JST(KAW), 2016 WL 4054884, at *1 (N.D. Cal. July 29, 2016) (court denying motion to compel interrogatory seeking "all factual and legal bases for your contention, if any, that you do not infringe and have not infringed" served before claim construction.)  Similarly, pursuant to Rule 33(a)(2), courts "tend to deny contention interrogatories filed before substantial discovery has taken place, but grant them if discovery is almost complete" *In re eBay Seller Antitrust Litig.*, No. C 07-1882 JF (RS), 2008 WL 5212170, at *1 (N.D. Cal. Dec. 11, 2008).  *See also* Amgen Inc. v. Sondoz Inc., No. 14-cv-04741-RS(MEJ), 2016 WL 913105, at *3 (N.D. Cal. Mar. 10, 2016) (holding that contention interrogatories must be propounded at an appropriate time after claim construction and near the end of discovery).  Despite the patent local rules, this Court's order and sound legal authority, SRI continues to forge ahead.  SRI has even gone so far as to ask for concessions from Dynatrace to avoid certain discovery such as agreeing that it will rely solely on expert testimony with respect to any reasonable royalty assessment.  Dynatrace should not be forced to make such choices when it has not even answered yet.

Dynatrace met and conferred with SRI in person for several hours, walking through each request and interrogatory one by one.  In the spirit of compromise, Dyntrace made the following suggestions to SRI:(1) identify the discovery it believes it needs for the mediation; (2) identify what discovery is still at issue in light of this Court's order and the local rules; (3) decide whether it would agree to limit its discovery to synthetic website testing without prejudice to seek other avenues of discovery later; (4)decide  whether it would defer willfulness and inducement discovery pending the outcome of the motion to dismiss: or (5) considering deferring discovery altogether until the pleadings are settled.  SRI has refused all efforts at compromise.  Instead, SRI has demanded that Dynatrace respond to all discovery period.

**9.    CLASS ACTIONS**

This is not a class action.

**10.    RELATED CASES**

1    There are no related cases or proceedings pending.

2    **11.    <u>RELIEF</u>**

3    <u>SRI's Position</u>:

4    SRI seeks monetary damages for Defendant's past and present infringement adequate to

5    compensate it for Defendant's infringement, as well as a permanent injunction preventing Defendant

6    from continuing those activities.  With respect to the monetary damages, SRI is seeking recovery in

7    amount equal to its lost profits, plus Defendant's ill-gotten gains.  SRI will be able to state those

8    amounts with precision after it has had discovery of Defendant's financial and sales records.  In the

9    alternative and in any event, SRI seeks recovery in an amount no less than a reasonable royalty for

10   the use made of the invention by Defendant, together with interest and costs as fixed by the court,

11   pursuant to 35 U.S.C. § 284.

12   SRI has received no information of any kind from Dynatrace regarding its revenues or

13   appropriate damage base in this matter.  Thus, at this time SRI is not in a position to provide even a

14   good-faith estimate as to the potential damages in this matter.  SRI will be able to provide a

15   reasonable, good-faith estimate thereof following Dynatrace's fulsome answers to SRI's upcoming

16   Rule 33 and 34 discovery requests.

17   Subject to the foregoing, a reasonable royalty in this case may be in the range of 10% of

18   Dynatrace's relevant revenues, plus a 10% running royalty for future infringement.  SRI cannot

19   provide even an estimate as to its lost profits (which would be based on factors including but not

20   limited to Dynatrace's unit sales) at this time.

21   Defendants are not seeking any damages from Plaintiff.

22   <u>Dynatrace's Position</u>:

23   Plaintiff's complaint does not identify any products where Dynatrace is able to easily locate

24   financial information.  Dynatrace is left to guess what products could be at issue. Since certain

25   Dynatrace products were the product of acquisition and end of life, obtaining financial information

26   has proven difficult.  SRI is not entitled to lost profits, as it is an NPE.  Requesting a 10 percent

27   royalty rate is indefensible under the current applicable legal standards given the technology at issue

28   and presumably, under the settlement agreements and dismissals Plaintiff has already entered into.

Nonetheless, since Dynatrace believes it does not infringe and the patents are invalid, Plaintiff should receive nothing.   The pleadings are not settled and Dynatrace has not yet answered. Therefore, Dynatrace is not in a position to determine whether it will seek affirmative financial relief at this time.

**12.** **SETTLEMENT AND ADR**

The parties agreed to stipulate to private mediation, and filed their Stipulation to ADR Process on April 12, 2018.  Benjamin Riley has been assigned as mediator in this action.  The deadline to complete mediation is currently scheduled for June 28, 2018.

**13.** **CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

The parties do not consent to proceed for all purposes before a magistrate judge.

**14.** **OTHER REFERENCES**

The Parties do not believe that this action is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15.** **NARROWING OF ISSUES**

The Parties have not yet discussed narrowing the issues in the case, but plan to initiate such a discussion as discovery progresses.

**16.** **EXPEDITED TRIAL PROCEDURE**

The Parties do not believe that this action could be handled under the Expedited Trial Procedure of General Order 64.

**17.** **SCHEDULING**

SRI's position:

SRI  proposes the schedule set forth below based on the Local Patent Rules, with slight modifications in light of holidays.  For dates after the Claim Construction Hearing, SRI proposes that the Court set a further Case Management Conference when it issues its claim construction order.  At that further CMC, the parties can provide their proposals for the schedule for the remainder of the case.

| Event | Dates |
|-------|-------|

| Event | Dates |
|---|---|
| Deadline for Initial Disclosures | April 14, 2018 |
| Deadline for Plaintiff's disclosure of Asserted Claims and Infringement Contentions | April 14, 2018 |
| Deadline for disclosure of Defendant's Invalidity Contentions | 90 days after Dynatrace has served its response to the First Amended Complaint, or August 1, 2018 (*See* Dkt. 38) |
| Deadline for disclosure of Plaintiff's Damages Contentions | As set forth in P.L.R. 3-8 |
| Deadline for disclosures of Defendant's Responsive Damages Contentions | As set forth in P.L.R. 3-9 |
| Deadline to complete ADR | 90 days from issuance of ADR Referral Order, or June 28, 2018 (*see* Dkt. 25) |
| Exchange of claim terms for construction | September 28, 2018 |
| Exchange of preliminary claim constructions and extrinsic evidence | October 12, 2018 |
| Deadline to seek leave to amend pleadings, add new parties, bring new cases, bring third party claims or cross claims | November 9, 2018 |
| Joint Claim Construction Chart and Prehearing Statement | November 9, 2018 |
| Claim Construction Discovery Closes | November 16, 2018 |
| Plaintiff's Claim Construction Brief Due | November 30, 2018 |
| Defendant's Claim Construction Opposition Due | December 14, 2018 |
| Plaintiff's Claim Construction Reply Brief due | December 21, 2018 |
| Claim Construction Hearing | January 8, 2019, or as soon thereafter as convenient for the Court |

| Event | Dates |
|---|---|
| Fact Discovery Cut-Off | To be determined at Case Management Conference following issuance of claim construction order |
| Disclosure of Opening Expert Report(s) | To be determined at Case Management Conference following issuance of claim construction order |
| Disclosure of Rebuttal Expert Report(s) | To be determined at Case Management Conference following issuance of claim construction order |
| Disclosure of Reply Expert Report(s) | To be determined at Case Management Conference following issuance of claim construction order |
| Expert Discovery Closes Regarding Invalidity and Unenforceability | To be determined at Case Management Conference following issuance of claim construction order |
| Last Day to File Dispositive Motions | To be determined at Case Management Conference following issuance of claim construction order |

Dynatrace's position:

As explained above, Dynatrace proposes that scheduling be postponed until after the motion to dismiss is heard and decided and mediation is completed. The parties initial and local rule disclosures will be effected by the outcome of Dynatrace's motion. Should the Court disagree, Dynatrace proposes the following alternative schedule in light of pre-paid vacations (Disneyland September 1-5) and scheduling conflicts in other matters. SRI has not demonstrated any need to expedite this case since it alleges that this dispute has been pending since 2009.

| Event | Dates |
|---|---|
| Deadline for Initial Disclosures | Two weeks after pleadings are settled |
| Deadline for Plaintiff's disclosure of Asserted | Served |

| Event | Dates |
|---|---|
| Claims and Infringement Contentions | |
| Deadline for disclosure of Defendant's Invalidity Contentions | 90 days after Dynatrace has served its response to the operative pleading |
| Deadline for disclosure of Plaintiff's Damages Contentions | As set forth in P.L.R. 3-8 |
| Deadline for disclosures of Defendant's Responsive Damages Contentions | As set forth in P.L.R. 3-9 |
| Deadline to complete ADR | 90 days from issuance of ADR Referral Order |
| Exchange of claim terms for construction | June 8, 2018 |
| Exchange of preliminary claim constructions and extrinsic evidence | June 29, 2018 |
| Deadline to seek leave to amend pleadings, add new parties, bring new cases, bring third party claims or cross claims | July 6, 2018 |
| Joint Claim Construction Chart and Prehearing Statement | July 9, 2018 |
| Claim Construction Discovery Closes | August 13, 2018 |
| Plaintiff's Claim Construction Brief Due | September 27, 2018 |
| Defendant's Claim Construction Opposition Due | October 29, 2018 |
| Plaintiff's Claim Construction Reply Brief due | November 27, 2018 |
| Claim Construction Hearing | December 7, 2018 or as soon thereafter as convenient for the Court |

**18.**    **FORMAT OF TECHNOLOGY TUTORIAL AND CLAIM CONSTRUCTION**

To the extent the Court believes a technology tutorial would be helpful in deciding the issues to be presented at claim construction, the parties jointly propose that such a tutorial be given by counsel, expert, or party from both sides at a time convenient for the Court, such as one week or one day prior to the claim construction hearing, on the morning of the claim construction hearing, or any other time convenient for the Court.

The parties jointly propose that no live testimony will be given at the claim construction hearing.  The parties further jointly propose that the claim construction hearing should proceed term-by-term, with each side presenting its position on each term before proceeding to the next term, and that the parties will alternate which side will begin arguing each term.

**19.**    **TRIAL**

SRI's position:

SRI has demanded trial by jury for all issues so triable.  SRI estimates that the parties would need approximately 5 – 7 days for trial in this matter.

Dynatrace's position

Since the pleadings are not yet settled, Dynatrace is not in a position to know if or for how long for trial in this matter.  Dynatrace will likely request trial by jury where appropriate.

**20.**    **DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

The Parties have disclosed non-party interested entities pursuant to Fed. R. Civ. P. 7.1 and Civil L.R. 3-16.

**21.**    **PROFESSIONAL CONDUCT**

The Parties' counsel of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**22.**    **OTHER MATTERS AFFECTING DISPOSITION OF THIS MATTER**

At this time, there are no other matters to address that may facilitate the just, speedy, and inexpensive disposition of this matter.

Date:  June 14, 2018                            SINGER / BEA LLP

                                                By:   */s/ Benjamin L. Singer*
                                                      Benjamin L. Singer
                                                      Evan Budaj
                                                      *Attorneys for Plaintiff Software Research, Inc.*

Date:  June 14, 2018

                                                By:   */s/ Karineh Khachatourian*

                                                      *Attorneys for Defendant Dynatrace, Inc.*


### **Attestation Regarding Signatures**

I, Benjamin L. Singer, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Date:  June 14, 2018                            */s/ Benjamin L. Singer*
                                                Benjamin L. Singer