

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
TAIWAN
BOSTON
HOUSTON
AUSTIN
HANOI
HO CHI MINH CITY

*FIRM and AFFILIATE OFFICES*

KARINEH KHACHATOURIAN
DIRECT DIAL: +1 650 847 4145
PERSONAL FAX: +1 650 618 2075
*E-MAIL:* karinehk@duanemorris.com

*www.duanemorris.com*

SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN
*A GCC REPRESENTATIVE OFFICE
OF DUANE MORRIS*

ALLIANCES IN MEXICO
AND SRI LANKA

July 18, 2018

**VIA ECF**

Hon. Elizabeth D. Laporte
United States District Court
450 Golden Gate Avenue
Courtroom E - 15th Floor
San Francisco, CA  94102

   Re: <u>*Software Research, Inc. v. Dynatrace LLC, et al.*, **Case No. 3:18-cv-00232-EMC (EDL): Joint Letter Brief regarding Dynatrace's Requests for Production**</u>

Dear Mag. Judge Laporte:

  Pursuant to Judge's Chen directive and § I(A) of the Court's Order Re Discovery Procedures (*see* D.I. 50), the parties in the above-captioned action respectfully submit this joint letter brief regarding a pending discovery dispute over information Dynatrace believes is necessary for mediation.

**<u>Dynatrace's Position</u>**

  SRI is a non-practicing entity that has sued at least ten other companies for patent infringement over the past seven years.  Over the course of that litigation history, various defendants have alleged that SRI's patents are invalid, for among other reasons, on sale bar, fraud on the patent office, and various invalidating prior art including SRI's own products. SRI is the only source of the discovery at issue.  As such, Dynatrace timely served Plaintiff SRI with five discrete requests for production directed to these areas.  SRI has improperly sought to limit its response to three of the requests (Request Nos. 2, 4 and 5), which are the subject of this joint letter.[1]

---

[1] The parties' disputes regarding the other requests in Dynatrace's initial set have either been resolved or deferred for now.

DUANE MORRIS LLP
2475 HANOVER STREET PALO ALTO, CA 94304-1194   PHONE: +1 650 847 4150 FAX: +1 650 847 4151
DM2\9013560

DuaneMorris

Hon. Elizabeth D. Laporte
July 18, 2018
Page 2

    After meeting and conferring in accordance with the Court's procedures, Dynatrace requests that the Court compel SRI to: (a) produce, in response to Request for Production No. 2, correspondence concerning prior art references and discussions of invalidity/validity that are transmitted via email and attached to email, even if such correspondence is not stored in a central repository; and (b) provide with the downloadable software packages it has agreed to produce in response to Request Nos. 4 and 5, information and/or material within its possession, custody or control that is necessary to enable Dynatrace to run the software.

    At the initial Case Management Conference on June 21, Judge Chen directed that the parties' discovery at this time should be limited to that which is necessary for the parties' upcoming mediation rather than "full blown discovery." For the reasons explained below, Dynatrace's requests are necessary for the upcoming mediation, are relevant and proportional. The information sought is also necessary for Dynatrace to complete its invalidity contentions, which are due August 1, 2018.

    Request For Production No. 2

    Dynatrace's Request No. 2 initially sought "All written COMMUNICATIONS (including email) between SRI and/or its outside counsel, on the one hand, and prior defendants and/or their counsel, on the other hand, involving any of the patents that are asserted in this litigation."

    As a compromise, for the purposes of mediation, Dynatrace has since narrowed this request to seek non-privileged third party communications concerning prior art references and discussions of invalidity/validity. SRI offered to and has agreed to search only its "central repositories" for responsive communications, but refused and still refuses to explain what that means. SRI's counsel would not confirm whether litigation records are kept in these central repositories, where these central repositories are, or whether attachments to such communications (which would have the most relevant information) would be stored there.

    The requested discovery is relevant at least because what SRI knows and has been told about the validity of its patents is critical to whether it misled the USPTO and further, whether it had this knowledge prior to suing Dynatrace. Further, email attachments are likely to include responsive communications and should not be excluded from SRI's production. Dynatrace expects that SRI and/or its counsel have discussed validity issues concerning the asserted patents with a number of third parties in connection with efforts to license and litigate the patents. While Dynatrace expects that at least some of these communications were conducted over email, as it made clear during the meet and confer, Dynatrace is not at this time requesting that SRI produce all responsive emails. Instead, to the extent that SRI/its outside counsel exchanged letters or prior art references that were attached to emails, SRI should not be able to withhold such material merely because it was transmitted via email. In short, SRI's response should not be limited to the responsive communications it chose to store in its central repositories. Further, Dynatrace is not seeking to merely identify prior art references, as SRI asserts, but rather to understand which references SRI was aware of, when they were made aware of them and what they have said about them and about their past statements to the USPTO (particularly to the extent such statements depart from its sworn statements to the USPTO regarding their own prior art products),

Hon. Elizabeth D. Laporte
July 18, 2018
Page 3

DuaneMorris

which are also relevant to mediation and SRI's basis for bringing this case despite such knowledge. This is information that SRI has and Dynatrace should not have to seek it from numerous other non-parties, as SRI suggests. In addition, Dynatrace is not seeking SRI to conduct full blown email discovery. In accordance with this Court's Order re Discovery Procedures, Dynatrace's limited request is for attachments that may just happen to be stored in email. The request does not run afoul of Fed. R. Civ. P 34 or the Model ESI Order which has not been agreed to at this time. Even if the Model ESI Order were in place, Dynatrace's specific, limited request for email attachments would not violate it as Dynatrace is not seeking the many things associated with ESI, such as metadata, etc. Further, Dynatrace's request is proportional to the needs of this case in view of the factors identified in Rule 26(a)(1) ("considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."). First, SRI's correspondence with third parties regarding invalidity discussions and prior art to the asserted patents are critically important to the case, including to the issue of identifying the prior art references of which SRI has been aware, how its released products prior to October 1999 worked, the statements made to the public at that time and whether it had this knowledge prior to filing suit. Second, while SRI is a small, non-practicing entity, there is no evidence that its resources are insufficient to enable it to review and retrieve its email attachments concerning such invalidity discussions, particularly since these records are most likely with its outside counsel. Dynatrace understands that the same two outside attorneys representing SRI in this case have been primarily responsible for communications with third parties regarding the asserted patents. SRI will not be unduly burdened by simply providing the email attachments from the relevant individuals that are within the scope of this request.

Further, the parties' upcoming mediation will be more meaningful and likely to be successful if SRI provides the information sought here.

Request Nos. 4 and 5

In response to Request Nos. 4 and 5, SRI has agreed to provide downloadable packages of all versions of its CAPBAK/Web and CAPBAK/Web [IE] Ver. 1.5 products in existence as of October 31, 1999, not just the latest version of each. However, SRI is refusing to provide basic information about the packages that may be necessary for Dynatrace to run the software.

Dynatrace is simply requesting that SRI provide with these packages the information necessary to run the software. For example, if a key is required to run the software, SRI should provide that key with the packages. Or, if the software will run only on a certain version of Windows, SRI should indicate which version. The point is to ensure that Dynatrace is able to run the software that SRI produces. In response, SRI has asserted that Dynatrace should have to propound a separate discovery request, or it will only provide the information now if it is "easy" to do so. This is not acceptable.

While Dynatrace does not seek to impose an undue burden, this is information only in SRI's possession. Having the downloadable software will be useless without being able to use it. Providing

DuaneMorris

Hon. Elizabeth D. Laporte
July 18, 2018
Page 4

the packages without including information and/or material necessary to run the software, is tantamount to not providing the packages at all. Further, being able to run the software (and determine whether the functionalities relevant to the invalidity of the asserted patents are present) is necessary for Dynatrace to complete its invalidity contentions that are due August 1 at least because it will allow Dynatrace to assess the veracity of SRI's past statements to the USPTO about the software. Simply providing information that SRI already has to ensure the software packages it has agreed to provide are operable is not an undue burden or improper strain on SRI's resources. Accordingly, Dynatrace respectfully requests that the Court compel SRI to provide this information.

**SRI's Position**

Dynatrace propounded its First Set of Requests for Production pursuant to FRCP 34 (the "RFPs") on June 4, 2018. *See* Exh. A [Dynatrace's RFPs]. On July 7, 2018, SRI served its responses thereto, indicating that it would produce non-privileged, responsive documents to many requests, and seeking to meet-and-confer with Dynatrace regarding certain other requests. *See* Exh. B [SRI's Responses and Objections to Dynatrace's RFPs]. The parties met-and-conferred on July 13, 2018, two days after Dynatrace first raised the issues set forth in this letter. *See* Exhibit C [Email thread].

During that meet-and-confer, SRI made numerous concessions in the spirit of compromise and in an attempt to avoid burdening Your Honor with this dispute. SRI agreed, as Dynatrace requested, to expand its document production responsive to RFP No. 1 to include both public and non-public documents, and to produce all non-privileged, responsive documents found pursuant to a reasonable search (not just those sufficient to show the structure, function, and operation of the products at issue). SRI agreed, as Dynatrace requested, to search central repositories for communications responsive to RFP No. 2. And SRI agreed, as Dynatrace requested, to produce downloadable packages of all versions of CAPBAK/Web and CAPBAK/Web [IE] Ver. 1.5 in existence as of October 31, 1999 (not just the latest version of each). Notwithstanding these concessions, Dynatrace seeks to burden SRI with what should be its own investigation into the matters at issue in this case. Because SRI has no obligation to do so, Dynatrace's requests should be denied.

RFP No. 2. Dynatrace seeks to require SRI to perform email searches and productions that are burdensome to SRI and improper, especially at this stage of the case. *First*, this Court, through its Model Order Regarding Discovery of Electronically Stored Information for Patent Litigation (the "Model ESI Order"), recognizes that "General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (collectively 'email')." "To obtain email parties must propound specific email production requests." *Id.* Thus, whether Dynatrace purports to seek emails or just attachments to emails,[2] that discovery may not be sought via general discovery requests under FRCP 34, such as the RFPs. SRI has committed to

---

[2] Dynatrace did not make this distinction during the parties' meet-and-confer. SRI learned that Dynatrace was seeking only email attachments for the first time when it received Dynatrace's draft of this letter brief, on Monday, July 16 at 5:30 p.m.

perform a reasonable search of central repositories for responsive, non-privileged documents in compliance with the RFPs read in view of the Model ESI Order.

*Second*, such a search is unduly burdensome to SRI and not proportional to the needs of the case in view of FRCP 26(a)(1). As Dynatrace admits above, this request is directed in part to prior art references, which are by definition public. Dynatrace should not be permitted to shift the burden to SRI to perform Dynatrace's prior art searches. Next, SRI raises the specter of inequitable conduct that it in fact first raised with SRI two months ago. Exh. D [Letter]. As SRI explained in response thereto, Dynatrace's theory of inequitable conduct is not even based in fact, let alone viable. Exh. E [Email thread]. Furthermore, what SRI said and knew in recent years (*i.e.*, in discussions with previous defendants) is irrelevant to its knowledge and intent at the time of the prosecution of the patents PTO decades ago, as relevant to any potential claim of inequitable conduct. Most important, however, is that this request is not even directed to underlying material that would inform Dynatrace about any facts potentially at issue—it merely seeks the work product of prior defendants. Dynatrace does not—and cannot—even claim that this information is necessary for it to serve its invalidity contentions, because it knows full well that it is capable of performing its own investigation regarding the prior art. While this discovery may be appropriate at some stage of this case, it is certainly not necessary to the parties' ability to mediate this case, and should be denied.

RFP Nos. 4 and 5. Although Dynatrace paints this request as easy as providing "a key," anyone who has attempted to troubleshoot a computer software issue—especially one regarding software released two decades ago—knows that it will never be that simple. Dynatrace cannot point to any rule requiring SRI to act as Dynatrace's IT staff because none exists. To the contrary, FRCP 34(b)(2)(E) requires that SRI "produce documents as they are kept in the usual course of business" and produce electronically stored information "in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms."

Moreover, this dispute is not even ripe for the Court's decision. As Dynatrace admits above, it does not yet have the downloadable software it requested and (necessarily) has not even attempted to run such software on its own. Should an issue arise after Dynatrace has attempted to run the software, SRI will work with Dynatrace in good faith to resolve the issue with information readily at hand. To the extent that Dynatrace merely requests "information that SRI already has," SRI has already agreed that it would provide "information from SRI regarding how to run the files on [Dynatrace's] computers . . . if that information was easily accessible for SRI . . . ; but that SRI would not engage in hours of testing and work to do so, if it turned out to be necessary." Exh. C [Email thread] at 3. For example, if all Dynatrace needs is "a key," that information will be provided along with the software—to the extent even SRI is able to do so for long-obsolete versions of its software. This agreement more than satisfies SRI's obligations at this stage of the case.

Finally, Dynatrace's claims that this discovery is "necessary for Dynatrace to complete its invalidity contentions that are due August 1," are simply untrue. Dynatrace's attempts to run old versions of SRI's software from the late-1990's are not the only way for Dynatrace to determine the functionality of that software. In fact, as early as April 14, 2018, in its P.L.R. 3-1 Infringement

DuaneMorris

Hon. Elizabeth D. Laporte
July 18, 2018
Page 6

Contentions, SRI informed Dynatrace that it would "make available for inspection computer code that evidences the conception and reduction to practice of the inventions disclosed in the Asserted Patents." Exh. F [Infringement Contentions] at 5. Dynatrace has never even asked SRI what source code could be made available for inspection, let alone requested an inspection of that source code. Because the requested information is not necessary to Dynatrace, is far outside the scope of any discovery request Dynatrace has made, and because Dynatrace does not even yet know if it will be able to run SRI's software on its own, Dynatrace's request should be denied.

\*        \*        \*

The parties hereby certify that counsel with full and complete authority on discovery matters for both parties met and conferred telephonically, pursuant to the Court's direction via its clerk. By signing this joint letter brief, lead trial counsel for both parties certify that they have concluded no agreement can be reached.

Respectfully submitted,

DUANE MORRIS LLP

By: /s/ Karineh Khachatourian
Karineh Khachatourian
Daniel T. McCloskey
Nikolaus A. Woloszczuk

Attorneys for Defendant,
DYNATRACE LLC

SINGER BEA LLP

By: /s/ Benjamin L. Singer
Benjamin L. Singer
Evan Budaj

Attorneys for Plaintiff,
SOFTWARE RESEARCH, INC.

## ATTESTATION

Pursuant to Civil L.R. 5-1(i)(3) regarding signatures, I attest under penalty of perjury that the concurrence in the filing of this document has been obtained from its signatories.

/s/ Karineh Khachatourian
Karineh Khachatourian