PAGES 1 – 24

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE ELIZABETH D. LAPORTE

| | |
|---|---|
| SOFTWARE RESEARCH, INC., )<br>)<br>       PLAINTIFF, )<br>)<br> VS. )<br>)<br>DYNATRACE, LLC, )<br>)<br>       DEFENDANT. )<br>)<br>_____) | <br><br><br><br>NO. 18-CV-0232 EMC<br><br><br><br>SAN FRANCISCO, CALIFORNIA<br>MONDAY<br>JULY 23, 2018 |

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

**RECORDING  11:07 A.M. – 11:32 A.M.**

**APPEARANCES:**

**FOR PLAINTIFF**          SINGER/BEA LLP
                        601 MONTGOMERY STREET, SUITE 1950
                        SAN FRANCISCO, CALIFORNIA 94111
            **BY:**  **BENJAMIN L. SINGER, ESQUIRE**
                  **EVAN N. BUDAJ, ESQUIRE**

**FOR DEFENDANT**          DUANE MORRIS LLP
                        2475 HANOVER STREET
                        PALO ALTO, CALIFORNIA 94304
            **BY:**  **DANIEL TODD MCCLOSKEY, ESQUIRE**

*TRANSCRIBED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR*
*                      RETIRED OFFICIAL COURT REPORTER, USDC*

MONDAY, JULY 23, 2018                                    11:07 A.M.

(TRANSCRIBER'S NOTE: DUE AT TIMES TO COUNSELS' FAILURE TO IDENTIFY THEMSELVES WHEN SPEAKING, CERTAIN SPEAKER ATTRIBUTIONS ARE BASED ON EDUCATED GUESS.)

---O0O---

PROCEEDINGS

**THE CLERK:**  CALLING 18-CV-232, SOFTWARE RESEARCH, INC. VERSUS DYNATRACE, LLC.

COUNSEL, PLEASE APPROACH THE PODIUMS TO STATE YOUR APPEARANCES.

**MR. SINGER:**  GOOD MORNING, YOUR HONOR.  BENJAMIN SINGER FROM SINGER/BEA ON BEHALF OF THE PLAINTIFF.  I HAVE WITH ME MY COLLEAGUE EVAN BUDAJ --

**MR. BUDAJ:**  GOOD MORNING, YOUR HONOR.

**MR. SINGER:**  -- WHO WILL BE SPEAKING FOR SRI THIS MORNING.

AND ALSO IN ATTENDANCE IS RITA BRAL AND HER HUSBAND, DR. EDWARD MILLER, WHO IS THE INVENTOR OF THE PATENTS IN THE SUIT AND WHO JOINTLY HAVE BEEN OPERATING SRI IN SAN FRANCISCO SINCE THE 1980'S.

**THE COURT:**  THANK YOU.

**MR. McCLOSKEY:**  GOOD MORNING, YOUR HONOR.  DANIEL MCCLOSKEY OF DUANE MORRIS FOR DYNATRACE.

**THE COURT:**  ALL RIGHT.  THANK YOU.

ALL RIGHT.  WELL, LET'S START WITH SRI'S LETTER.

I -- I THINK THAT DISCOVERY IN FEDERAL CASES NOW IS LIMITED TO RELEVANT TO THE CLAIMS OR DEFENSES AND NOT THE SUBJECT MATTER, AND SO AT THIS TIME, THE CLAIMS AND DEFENSES DON'T INCLUDE WILLFULNESS PRE-SUIT KNOWLEDGE.  SO -- NOW, IF SOME OTHER CLAIM IN DEFENSE DOES IN SOME WAY HAPPEN TO PICK SOMETHING LIKE THAT UP, YOU KNOW, THEN I THINK -- AND I THINK WHAT JUDGE CHEN WAS TRYING TO GET AT, THEN YOU MIGHT HAPPEN TO GET THAT.  BUT IT'S NOT -- IN GENERAL, IT'S NOT SUBJECT TO DISCOVERY.

I DO, YOU KNOW -- AND IT'S -- SO IT'S NOT.  IT'S -- IF IT'S TRULY AN OBSTACLE FOR SETTLEMENT, THERE MAY BE A REASON SEPARATELY FOR THE DEFENDANT TO SHARE SOME INFORMATION ABOUT THAT POTENTIALLY SUBJECT TO COMPLETELY UNUSABLE CONFIDENTIALITY TYPES OF THINGS, BUT THAT'S NOT SOMETHING I CAN ORDER.  OF COURSE, I WOULD ENCOURAGE YOU TO -- I MEAN, I THINK IN GENERAL EXCHANGING THE INFORMATION YOU NEED FOR SETTLEMENT IS A VERY GOOD IDEA, OTHERWISE, YOU KNOW, YOU'RE GOING TO BE WASTING TIME AND MONEY ON IT.

BUT AS -- THAT IS NOT ONE OF THE THINGS THAT THE COURT CAN ORDER BE THE SUBJECT OF DISCOVERY.  SO UNLESS THERE'S SOME OTHER REASON THAT ANY OF THAT IS DISCOVERABLE IN SORT OF A SIDEWAYS WAY AS SOMETHING WITHIN THE SCOPE OF SOMETHING ELSE, WHICH I DON'T THINK SO, AND IT'S NOT PHRASED THAT WAY TO ME...

INSOFAR AS THE DEFENDANT IS SAYING ALL SORTS OF THINGS LIKE -- THAT IS DISCOVERABLE AND -- AND IS VERY RELEVANT TO SETTLEMENT, LIKE, HOW DO WE VALUE THIS TECHNOLOGY, WHAT ARE

THE COMPARABLE LICENSES, WHAT'S THE REVENUE STREAM, ET CETERA, I THINK THE DEFENDANT IS GENERALLY SAYING, WELL, WE'RE JUST GOING TO PRODUCE THAT UNDER THE NORMAL PATENT LOCAL RULES, AND THAT'S AUGUST 1ST.  THAT'S A FEW WEEKS BEFORE THE SETTLEMENT, BUT IT'S PRETTY CLOSE.  ON THE OTHER HAND WE'RE NOW AT JULY 23RD.

SO, I MEAN, IT SEEMS TO ME THOSE REQUESTS ARE ALL COMPLETELY LEGITIMATE, AND THEN THE QUESTION ARISES:  IS THERE SOMETHING YOU CAN SPEED UP NOW, BECAUSE THE SOONER THEY CAN GET THINGS ABOUT THE REVENUES THAT -- THE COMPARABLE LICENSES, ET CETERA, THE BETTER.

**MR. McCLOSKEY:**  WELL, YOUR HONOR, I WOULD SAY THAT, YOU KNOW, I THINK WHAT THEY'VE BEEN TRYING TO DO ALL ALONG IS TO SPEED THINGS UP, AND JUDGE CHEN HAS SAID THAT HE'S NOT INCLINED TO DO THAT.

**THE COURT:**  WELL, NOW YOU'VE GOT ME.  SO I'M TELLING YOU WHAT I THINK.

**MR. McCLOSKEY:**  UNDERSTOOD.

**THE COURT:**  ALL RIGHT.

**MR. McCLOSKEY:**  WELL, I GUESS WHAT I WOULD SAY IS WE'RE IN THE PROCESS OF COLLECTING THE INFORMATION THAT'S GOING TO BE NECESSARY TO COMPLY WITH THE DISCLOSURES ON AUGUST 1ST.

**THE COURT:**  RIGHT.  AND I'M ASKING YOU, CAN YOU ADVANCE SOME OF THAT?

**MR. McCLOSKEY:**  WELL, YOU KNOW, THE REALITY IS, YOUR

HONOR, THERE'S SOME PRACTICAL DIFFICULTIES WITH THE COLLECTION IN GENERAL HERE.  I MEAN, FOR ONE THING, WE'VE ALREADY ADVISED COUNSEL THAT THERE ARE NOT, YOU KNOW, LICENSES THAT ARE RESPONSIVE TO THEIR REQUEST, BUT --

THE COURT:  AND ON THAT I WOULD -- TO THE EXTENT THAT YOU'VE MADE REASONABLE EFFORTS TO LOCATE ANY AND THERE ARE NONE, I WOULD ORDER YOU TO PROVIDE SOME KIND OF DECLARATION, VALID DECLARATION, BY THE PERSONS KNOWLEDGEABLE, TO THAT EFFECT, WHAT SEARCH EFFORTS OR OTHER EFFORTS YOU'VE MADE TO DETERMINE THAT.  I MEAN, IT COULD BE YOU HAVE A POLICY AND YOU NEVER LICENSED ANYTHING.

MR. McCLOSKEY:  WELL, --

THE COURT:  BUT THERE HAS TO BE SOMETHING THAT YOU'RE HELD TO ON THAT.

MR. McCLOSKEY:  UNDERSTOOD, YOUR HONOR.  I GUESS A COUPLE OF THOUGHTS.  I DON'T THINK WE SHOULD HAVE TO DO MORE THAN WHAT WE'RE REQUIRED TO DO UNDER THE FEDERAL RULES.

THE COURT:  YOU WILL HAVE TO DO WHAT I ORDER YOU TO DO, AND THAT IS SOMETHING I ROUTINELY DO.  I'VE BEEN DOING IT FOR 19, 20 YEARS.  NOBODY HAS EVER TOLD ME THAT --

MR. McCLOSKEY:  OKAY.

THE COURT:  -- IT'S NOT REQUIRED UNDER THE FEDERAL RULES IF I ORDER IT.

MR. McCLOSKEY:  OKAY.  ALL RIGHT.  FAIR ENOUGH.

THE COURT:  OKAY.

**MR. McCLOSKEY:** THERE'S SOME -- IN ADDITION TO THE PRINCIPLES IN TERMS OF THE TIMING, THERE'S ALSO THE PRACTICALITIES HERE.  YOU KNOW, DYNATRACE, AS COUNSEL KNOWS AND WE TRIED TO EXPLAIN -- IS A PRODUCT OF MULTIPLE DIFFERENT ACQUISITIONS BY PRIVATE EQUITY COMPANIES.

**THE COURT:** RIGHT.

**MR. McCLOSKEY:** SO IN THEIR COMPLAINT, WHICH WE'VE ALREADY AMENDED TO TRY TO ALLEGE AROUND PRE-SUIT KNOWLEDGE AND ALL THAT, YOU KNOW, THERE ARE TWO OR THREE DIFFERENT COMPANIES THAT PRECEDED DYNATRACE THAT WERE NOT CONNECTED TO DYNATRACE, AND, YOU KNOW -- SO IN ORDER TO GATHER THE INFORMATION THAT'S NECESSARY TO RESPOND TO THE DISCOVERY AND/OR THE DISCLOSURES, THAT'S CHALLENGING FOR US BECAUSE DYNATRACE, YOU KNOW --

**THE COURT:** OKAY --

**MR. McCLOSKEY:** -- IN 2014 --

**THE COURT:** BUT WHERE IS ALL THIS LEADING?  I'M ASKING YOU IF THERE'S ANYTHING YOU CAN PRIORITIZE AND TURN OVER SOONER THAN AUGUST 1ST.

**MR. McCLOSKEY:** WELL, I --

**THE COURT:** AND I DON'T KNOW WHAT YOUR ANSWER IS STILL.

**MR. McCLOSKEY:** I DON'T KNOW WHAT WE CAN PRIORITIZE. WE ARE WORKING ON THE COLLECTION NOW.  I MEAN, WE'RE ONLY A WEEK OUT.

**THE COURT:** THAT'S TRUE.

**MR. McCLOSKEY:**  SO WE INTEND TO DO THAT.

**THE COURT:**  ALL RIGHT.  WELL, YOU'VE GOT TO COMPLY WITH THAT AUGUST 1ST DEADLINE.

**MR. McCLOSKEY:**  RIGHT.  AND WE INTEND TO DO THAT.

**THE COURT:**  SO -- ALL RIGHT.  WHAT?

**MR. BUDAJ:**  IF I MAY, YOUR HONOR?  GOING BACK TO SORT OF FIRST PRINCIPLES HERE, I THINK PART OF THE ISSUE IS THAT WE HAVE A CONCERN THAT THE SCOPE OF WHAT IS REQUIRED UNDER PATENT LOCAL RULE 3-4 IS, A, POTENTIALLY MUCH NARROWER THAN THE VALID DISCOVERY REQUESTS THAT WE'VE MADE AND MADE, YOU KNOW, BACK IN APRIL AND THAT DYNATRACE SAT ON ITS HANDS FOR MONTHS AND MONTHS, BUT, B, MORE IMPORTANTLY, DYNATRACE, YOU KNOW, APPEARS TO BE SCOPING THOSE THINGS ON THEIR OWN AND SORT OF WITHOUT GIVING US ANY INDICATION OF HOW THOSE THINGS ARE BEING SCOPED.

SO, YOU KNOW, IMPORTANTLY, ONE EXAMPLE IS IN THE CONTEXT -- AND, REALLY, THIS APPLIES BOTH TO SCOPE OF INFRINGEMENT AND DAMAGES.  WE KNOW, FOR EXAMPLE, THAT SOME OF THESE PRIOR COMPANIES HAVE MADE PRODUCTS THAT INCORPORATE THE SYNTHETIC WEB MONITORING TECHNOLOGY.

COUNSEL, WHO IS NOT HERE RIGHT NOW, TOLD US THAT ON A MEET AND CONFER -- AND I DON'T REMEMBER IF MY COLLEAGUE HERE WAS ON THE PHONE AT THAT TIME OR NOT.  BUT THOSE PRODUCTS THAT WE KNOW EXIST, WE JUST DON'T KNOW IF THAT'S GOING TO BE PART OF WHAT'S GIVEN TO US ON AUGUST 1ST.  WE HAVEN'T HAD ANY DISCUSSION ABOUT THAT --

**THE COURT:** WELL, IS IT?  I MEAN --

**MR. McCLOSKEY:** WE'RE GOING TO DO THAT THE BEST WE CAN --

**THE COURT:** I DON'T KNOW WHAT -- THIS IS A FOG.  WHAT DOES THAT MEAN?

**MR. McCLOSKEY:** WELL, I AGREE, AND I THINK PART OF THE PROBLEM IS THIS IS A VERY ABSTRACT CONVERSATION.  WE'RE NOT TALKING ABOUT ANY SPECIFIC REQUESTS HERE, AND ONE OF THE REASONS I THINK THEY'RE AVOIDING THAT IS BECAUSE WHEN YOU LOOK AT THEM, YOU SEE THAT THEY ARE ASKING -- YES, YOU TALKED ABOUT SCOPE.  THE SCOPE IS DEFINED BY --

**THE COURT:** WELL, I AGREE THAT --

**MR. McCLOSKEY:** -- THE PRODUCTS IN THE CASE.

**THE COURT:** CORRECT.

**MR. McCLOSKEY:** ACCORDING TO JUDGE CHEN.

**THE COURT:** WELL, HE -- SYNTHETIC MONITORING, I THINK IS WHAT HE SAID.

**MR. McCLOSKEY:** RIGHT.

**THE COURT:** AND HE POINTED TO A COUPLE OF PARAGRAPHS IN THE COMPLAINT.  AND THE QUESTION -- THEY SEEM TO BE REPRESENTING THAT THERE WERE PRIOR COMPANIES THAT ACTUALLY DID THAT, THAT YOU'VE ACQUIRED.  I DON'T KNOW IF THAT'S TRUE OR FALSE, BUT --

**MR. McCLOSKEY:** THAT MAY BE THE CASE, AND WE'RE CERTAINLY --

**THE COURT:** IF SO, THAT'S WITHIN THE SCOPE, RIGHT?

**MR. McCLOSKEY:** AND WE'RE TRYING TO GATHER THAT TO THE EXTENT THAT WE CAN, YOUR HONOR.

**THE COURT:** SO --

**MR. McCLOSKEY:** THE PROBLEM IS PEOPLE HAVE LEFT THESE COMPANIES. PEOPLE HAVE TURNED OVER SYSTEMS, HAVE BEEN LEGACIED OUT, AND SO IT'S NOT AS STRAIGHTFORWARD AS COUNSEL WOULD SUGGEST.

**THE COURT:** I'M SURE IT MAY NOT BE STRAIGHTFORWARD, BUT THERE IS A DEADLINE, AND IT'S BEEN LOOMING FOR MONTHS, AND THE QUESTION IS -- I GUESS ALL I CAN TELL YOU -- AND I DON'T HAVE ALL DAY TO JUST GO ON AND ON IN VAGUE WAYS FROM BOTH SIDES ABOUT: WE THINK THEY HAVE SOMETHING, WE DON'T KNOW IF WE DO OR NOT. THIS IS LEADING NOWHERE, AND IT'S NOT HELPFUL TO THE COURT.

SO WHAT -- WHAT I WILL HOLD YOU TO IS THAT IF YOU DON'T PRODUCE THINGS THAT SEEM LIKE THEY SHOULD EXIST -- AND THAT YOU GIVE DETAILED DECLARATION ABOUT ALL THE REASONABLE SEARCH EFFORTS THAT YOU MADE, AND IF THEY CAN SUGGEST SOME WAY THAT YOU SHOULD HAVE DONE IT AND YOU HAVEN'T, THEN YOU MAY VERY WELL BE ORDERED TO DO IT. BUT -- AND I DO THINK YOU SHOULD BE DISCUSSING THIS IN ADVANCE, NOT WAITING FOR AUGUST 1ST AND THEN SAYING -- AND THEM SAYING, OH, THIS IS REALLY INADEQUATE, AND THEN YOU SAY, NO, IT ISN'T, AND HERE'S WHAT WE DID, AND THEN YOU FIGHT OVER IT.

AND WHEN IS THE MEDIATION?

**MR. McCLOSKEY:**  AUGUST 20TH.

**THE COURT:**  YEAH.  SO THAT'S NOT GOING TO WORK FOR THE MEDIATION.

**MR. McCLOSKEY:**  WELL, UNDERSTOOD, AND I THINK WE'VE BEEN TRYING TO MEET AND CONFER WITH THEM ABOUT THESE TOPICS AND TRYING TO DO IT, AND I THINK THEY ARE CONTINUALLY TRYING TO, YOU KNOW, PUSH THINGS FORWARD AND CONFLATE THE DISCOVERY WITH THE DISCLOSURES AND SO ON, AND THAT'S THE CHALLENGE.

**THE COURT:**  EVEN IF IT'S THE DISCLOSURES, THEY'RE DUE AUGUST 1ST, AND THEY NEED TO BE ROBUST.

NOW, WHAT IS IT THAT YOU THINK THEY ARE NOT GIVING YOU THAT -- WE TALKED ABOUT THE SO-CALLED EXAMPLE, WHICH IS VERY VAGUE.  OTHER THAN THAT, IS THERE SOMETHING ELSE?

**MR. BUDAJ:**  YES, YOUR HONOR, THERE'S A COUPLE OF THINGS.  ANOTHER INSTANCE OF -- AND THIS IS IN THE EMAILS THAT WE EXCHANGED IN MEET AND CONFERS PRIOR TO FILING THIS LETTER WITH THE COURT.  THERE'S ANOTHER FUNCTIONALITY OF -- AND I'LL HAVE TO PUT A BOOKMARK HERE -- ANOTHER FUNCTIONALITY OF THE DPM PRODUCT CALLED REAL USER MONITORING THAT WE ALSO HAVE REASON TO BELIEVE INFRINGE.

THERE'S JUST NOT, AS WE'VE BEEN ABLE TO LOOK SO FAR, SUFFICIENT INFORMATION ON THEIR WEBSITE FOR US TO DETERMINE THAT.  THEIR WEBSITE IS NOT VERY SPECIFIC ABOUT HOW THEIR PRODUCTS WORK.  IT'S NOT VERY SPECIFIC ABOUT HOW THEIR PRODUCTS

ARE SOLD.

THE COURT:  IS REAL USER MONITORING PART OF SRI?  I MEAN, PART OF -- I'M SORRY -- THE SYNTHETIC MONITORING?

MR. BUDAJ:  MY UNDERSTANDING IS THAT IT'S NOT BUT THAT THEY'RE BOTH PART OF THE DPM PRODUCT.  THEY'RE BOTH FUNCTIONALITIES OF A PRODUCT CALLED DYNATRACE PERFORMANCE MANAGEMENT, AND THAT'S TO OUR BEST KNOWLEDGE.

AS WE DISCUSSED WITH JUDGE CHEN AT THE CMC, DYNATRACE POTENTIALLY HAS A PRODUCT OR MORE THAN ONE PRODUCTS THAT FALL UNDER THIS UMBRELLA CALLED DYNATRACE PERFORMANCE MONITORING. ONE OF THE BIGGEST CHALLENGES FOR US GOING INTO MEDIATION, YOUR HONOR, IS WE STILL, STANDING HERE TODAY, DON'T UNDERSTAND HOW THE PRODUCTS ARE SOLD.  WE DON'T KNOW WHAT THE NAME OF THE PRODUCT IS THAT DYNATRACE SELLS.  WE DON'T KNOW WHETHER THESE DIFFERENT FUNCTIONALITIES ARE ACTUALLY SEPARATE PRODUCTS, OR WHETHER THEY'RE ADD-ONS THAT YOU CAN BUY, OR WHETHER THEY'RE JUST DIFFERENT TABS THAT OPEN UP IN THE APPLICATION WHEN YOU RUN IT.  WE DON'T KNOW ANY OF THAT BECAUSE DYNATRACE WON'T TELL US.

THE COURT:  WHAT'S YOUR RESPONSE?

MR. McCLOSKEY:  YOUR HONOR, THE KEY ANSWER WAS IT'S NOT PART OF THAT FUNCTIONALITY, AND THAT FUNCTIONALITY, SYNTHETIC MONITORING, IS EXPLICITLY WHAT JUDGE CHEN LIMITED THE CASE TO AT THIS TIME --

THE COURT:  I AGREE.

**MR. McCLOSKEY:** -- AT PARAGRAPH 15 AND 16. THEY'RE TRYING TO GO AROUND THAT AND TRYING TO GET ANOTHER BITE AT IT. THAT'S WRONG. AND IT'S NOT WITHIN THE CASE AT THIS POINT --

**THE COURT:** WELL, I AGREE WITH THAT.

**MR. McCLOSKEY:** -- IN TERMS OF THIS DISCOVERY.

**THE COURT:** I THINK THAT'S RIGHT. SO UNLESS YOU CAN GET SOMETHING UNDER THE UMBRELLA OF THE SYNTHETIC MONITORING, I ALREADY BROUGHT THAT UP WITH YOU. SO I'M NOT GOING TO LET YOU GIVE ANY OTHER EXAMPLES THAT ARE JUST -- I ALREADY RULED AGAINST, SO --

**MR. BUDAJ:** I UNDERSTAND, YOUR HONOR, AND I WOULD -- I WOULD POINT TO THE COURT'S TRANSCRIPT. I MEAN, THIS IS --

**THE COURT:** ARE YOU TRYING TO GET ME TO RECONSIDER AGAIN? BECAUSE LET'S MOVE ON THEN.

**MR. BUDAJ:** I'M JUST TRYING TO SAY I DON'T THINK THAT WAS JUDGE CHEN'S RULING.

**THE COURT:** WELL. OKAY, I THINK, LIKE I SAID, I DON'T -- HE'S NOT -- YOU HAVE ME NOW. AND SO I DID READ THE TRANSCRIPT. IT'S A LITTLE BIT UNCLEAR. BUT I THINK HIS POINT WAS SOMETIMES WHEN SOMETHING IS WITHIN THE SCOPE YOU ARE -- YOU'RE ABLE TO LOOK FURTHER. IF THERE WAS SOME OTHER REASON WHY YOU HAD -- FOR EXAMPLE, IT WAS RELEVANT TO HOW THEY SOLD THINGS, THEN YOU COULD GET IT. BUT YOU HAVEN'T ARTICULATED THAT.

SO -- ALL RIGHT. LET'S GET ON TO -- ALSO, YOU'RE

LOOKING FOR PRE-SUIT COMMUNICATIONS THAT ARE NON-PRIVILEGED OR POST-SUIT NON-PRIVILEGED ABOUT SRI, THE PATENTS IN SUIT.  THAT SEEMS TO ME FAIR GAME.  WHAT'S WRONG WITH THAT?

**MR. McCLOSKEY:**  THE PROBLEM IS THE COURT DISMISSED THEIR PRE-SUIT INDIRECT INFRINGEMENT CLAIM AND DISMISSED THEIR WILLFULNESS CLAIM ALL TOGETHER.

**THE COURT:**  OKAY.

**MR. McCLOSKEY:**  SO ALL THE PRE-SUIT DISCUSSIONS THAT RELATE TO THESE --

**THE COURT:**  ALL RIGHT.  SO WHAT ABOUT THE POST-SUIT NON --

**MR. McCLOSKEY:**  WELL, AGAIN, IT'S NOT RELEVANT TO EITHER -- TO ANY OF THE CLAIMS IN THE CASE BECAUSE WILLFULNESS IS OUT ALL TOGETHER, AND INDIRECT INFRINGEMENT IS LIMITED TO POST-SUIT.

**THE COURT:**  WELL, WHAT IF IT'S ABOUT INFRINGEMENT, THOUGH?  IF IT'S POST SUIT AND IT'S ABOUT INFRINGEMENT, EVEN NON-WILLFUL INFRINGEMENT, WHY ISN'T THAT RELEVANT?

**MR. McCLOSKEY:**  WELL, I THINK WE'RE KIND OF GOING AROUND ERRATICAL HERE, BECAUSE POST-SUIT, WE'RE TALKING ABOUT SINCE THIS LAWSUIT WAS FILED, DISCUSSIONS AROUND THIS WITH SRI, WHICH HAVE ALL BEEN IN THE CONTEXT OF COUNSEL CONVERSATIONS. IT DOESN'T SEEM TO MAKE SENSE TO PRODUCE THINGS THAT WE'VE COMMUNICATED WITH THE OTHER SIDE ABOUT THIS CASE SINCE IT GOT FILED THAT MIGHT RELATE TO THOSE TOPICS.

**THE COURT:** WELL, I AGREE WITH THAT.  I MEAN, IF YOU ALREADY HAVE IT, IT'S EQUALLY IN YOUR POSSESSION.  BUT YOU'RE TALKING ABOUT WITH SOME PARTY?

**MR. BUDAJ:** I WOULD AGREE WITH THAT, AS WELL, YOUR HONOR.  COMMUNICATIONS WITH SRI SINCE THE SUIT HAD BEEN FILED, OF COURSE, HAVE BEEN WITH US.

**THE COURT:** RIGHT.

**MR. BUDAJ:** AND THAT IS THINGS THAT WE ALREADY HAVE.  BUT THIS IS NOT JUST COMMUNICATIONS WITH SRI.  IT'S COMMUNICATIONS ABOUT SRI.

**THE COURT:** RIGHT.

**MR. BUDAJ:** AND TO THE EXTENT THAT, FOR EXAMPLE, DYNATRACE KNEW ABOUT SRI AND SAW THEIR PATENTS -- AND EVEN IF THIS ISN'T A WILLFUL INFRINGEMENT QUESTION, IT'S A QUESTION OF INFRINGEMENT.  IT'S A QUESTION OF HOW THIS INFRINGEMENT HAPPENED AND WHEN THEIR FIRST KNOWLEDGE WAS, WHICH IS RELEVANT EVEN IF WE DON'T HAVE, YOU KNOW, AN EXPLICIT PRE-SUIT ALLEGATION AT THIS TIME.  IT'S STILL RELEVANT TO THE QUESTION OF INFRINGEMENT.

**MR. McCLOSKEY:** IT'S ACTUALLY NOT RELEVANT, YOUR HONOR BECAUSE --

**THE COURT:** RIGHT.  I DON'T THINK IT IS.

**MR. McCLOSKEY:** -- THE KNOWLEDGE IS BASED ON THE FILING OF THE LAWSUIT.

**THE COURT:** NO, IT'S NOT.

**MR. McCLOSKEY:** WE HAVE KNOWLEDGE. THERE'S NO SECRET ABOUT THAT ANY MORE --

**THE COURT:** NO --

(SIMULTANEOUS COLLOQUY.)

**MR. McCLOSKEY:** -- NEED TO PROVE IT.

**THE COURT:** AND YOU'VE JUST BASICALLY JUST TALKED YOURSELF OUT OF THE POST-SUIT, AND YOU'VE FOCUSED ON PRE-SUIT AND I DON'T -- THE PRE-SUIT -- INFRINGEMENT DOESN'T DEPEND ON KNOWLEDGE. YOU INFRINGE EVEN IF YOU HAVE NO IDEA ABOUT THE PATENT. IT DEPENDS ON WILLFUL -- THAT DOES GO TO WILLFULNESS, SO -- ALL RIGHT. SO I WOULD DENY THAT.

SO YOU HAVE -- YOU'VE GOT PROFIT INFORMATION REGARDING SYNTHETIC MONITORING. I THINK YOU'VE ASKED FOR IN INTERROGATORIES. WHAT'S THE SITUATION WITH THAT?

**MR. McCLOSKEY:** AGAIN, WE'RE GOING TO BE PRODUCING ON AUGUST 1ST THE SALES PROFIT INFORMATION RELEVANT TO THIS -- WHAT'S WITHIN THE CASE, THE PRODUCT WITHIN THE CASE, WITHIN A WEEK. AND SO WE'RE GOING TO DO THAT TO THE BEST OF OUR ABILITY DESPITE, YOU KNOW, THE DIFFERENT CORPORATE CHANGES, YOU KNOW, BEHIND DYNATRACE AND THE COMPANIES THAT HAVE ACQUIRED OTHER COMPANIES THAT ARE RELATED TO THIS. WE'RE GOING TO DO THE BEST WE CAN TO MAKE A ROBUST PRODUCTION ON THE 1ST.

THERE'S NO REASON -- YOU KNOW, JUDGE CHEN LIMITED THIS CASE TO WHAT IS THE DISCOVERY NOW, TO MEDIATION-RELATED DISCOVERY, AND IT'S NOT NECESSARY FOR US TO, YOU KNOW, ADVANCE

THAT BY A COUPLE OF DAYS, I GUESS IS WHAT THEY'RE EFFECTIVELY ASKING FOR.

THE COURT:  SO APART FROM THE DATE, I WAS ASKING --

MR. McCLOSKEY:  WHAT WE'RE --

THE COURT:  IS THERE INTERROGATORIES -- IS THERE SOMETHING YOU THINK YOU'RE NOT GOING TO GET?

MR. BUDAJ:  YES, YOUR HONOR, THERE IS.

AND, YOU KNOW, TO FRAME THIS DISCUSSION, WHEN WE GO INTO MEDIATION, DYNATRACE IS NOT GOING TO BE ASKING US FOR A LICENSE THAT JUST GOES TO SYNTHETIC WEB MONITORING.  THEY'RE GOING TO ASK US -- PARDON ME -- TO EXTINGUISH ALL OF THEIR LIABILITY FOR EVERY PRODUCT THEY HAVE, FOR ALL OF THEIR PRIOR PRODUCTS THAT HAVE BEEN BROUGHT IN BEFORE, AND, YOU KNOW, REALLY NOTWITHSTANDING ANYTHING ELSE, WE NEED TO UNDERSTAND THE FULL SCOPE OF LIABILITY THERE IN ORDER TO BE ABLE TO MEDIATE EFFECTIVELY.

THE COURT:  WELL, I ALREADY -- OKAY.  I'VE ALREADY RULED YOU CAN'T GET ANYTHING THAT'S NOT THE SUBJECT OF THE COMPLAINT.  I'VE EXPLAINED THAT I THINK IT'S IN THEIR INTEREST TO HAVE AN AGREEMENT WITH YOU -- IF THEY'RE GOING TO ASK FOR THAT, THEY'RE GOING TO HAVE END UP DOING -- GIVING YOU SOME DUE DILIGENCE, TRUST-BUT-VERIFY INFORMATION ONE WAY OR THE OTHER ABOUT THAT, BUT I CANNOT ORDER THAT.  SO YOU'RE DONE THEN.

YOU JUST KEEP REITERATING THE SAME THINGS WHICH I'VE RULED AGAINST.  I DON'T KNOW WHY YOU'RE SPENDING THE COURT'S

TIME ON THAT. IT'S REALLY --

**MR. SINGER:** MAY ASK A QUESTION, YOUR HONOR?  WITH RESPECT TO -- I HEAR THE COURT SAYING I CAN'T ORDER THAT.

**THE COURT:** I WON'T AND I CAN'T.

**MR. SINGER:** CAN'T AND WON'T, AND WE APPRECIATE THAT.

**THE COURT:** YEAH, EXCEPT YOU KEEP COMING BACK TO IT THREE TIMES.

**MR. SINGER:** I HAVE A DIFFERENT QUESTION, I PROMISE.

**THE COURT:** YEAH.

**MR. SINGER:** SO ARE YOU SAYING IT'S NOT APPROPRIATE DISCOVERY RELIEF TO BE ORDERED, OR ARE YOU MAKING A HARD AND FAST RULE ABOUT THE SCOPE OF DISCOVERY AS A WHOLE, BECAUSE WE'RE GOING -- AND THIS IS THE WAY THESE CASES TYPICALLY UNFOLD -- WHEN DEPOSITIONS OCCUR, THOSE WITNESSES WILL BE ASKED QUESTIONS ABOUT THESE PRODUCTS IN AN ATTEMPT TO DISCOVER POTENTIAL LIABILITY THAT ISN'T APPARENT FROM PUBLIC RECORDS AND I'M JUST --

(SIMULTANEOUS COLLOQUY.)

**THE COURT:** I'M NOT GOING TO GIVE AN ADVISORY OPINION.  BUT, IN GENERAL, I'VE EXPLAINED THAT THE SCOPE IS WHAT'S RELEVANT TO CLAIMS OR DEFENSES.  SOMETIMES THAT CAN BRING IN THINGS THROUGH DIFFERENT WAYS, AND THAT INCLUDES DAMAGES.  SO -- ALL RIGHT.

SO LET'S GO TO DYNATRACE'S LETTER.

ALL RIGHT.  SO YOU WANTED CORRESPONDENCE BETWEEN SRI

AND DEFENSE IN OTHER LAWSUITS REGARDING THE PATENTS AS FAR AS DISCUSSING PRIOR ART VALIDITY OR INVALIDITY?

**MR. McCLOSKEY:** THAT'S RIGHT, YOUR HONOR. THAT'S WHAT WE'RE LOOKING FOR. AND, SPECIFICALLY, TO SORT OF NARROW AND FOCUS THE ISSUE HERE, YOU KNOW, THEY'VE AGREED TO PRODUCE DOCUMENTS THAT ARE RESPONSIVE TO THAT REQUEST THAT ARE STORED IN THEIR CENTRAL REPOSITORY. WE DON'T KNOW WHAT MEANS OR HOW THINGS GET IN THERE, BUT THAT'S WHAT THEY SAID THEY'LL DO.

BUT WHAT WE'RE SEEKING, BECAUSE WE DON'T HAVE MORE CLARITY ABOUT THAT, IS TO ENSURE THAT IF THERE'S CORRESPONDENCE THAT IS EXCHANGED, WRITTEN CORRESPONDENCE -- WE'RE NOT TALKING ABOUT IF THEY HAD AN EXTENDED EMAIL BACK AND FORTH WITH SOMEONE, BUT IF SOMEBODY TRANSMITTED A WRITTEN LETTER VIA EMAIL THAT'S ON THIS TOPIC THAT'S RESPONSIVE TO THAT, WE WOULD WANT THEM TO PRODUCE THAT. WE UNDERSTAND THERE'S A VERY LIMITED UNIVERSE OF PEOPLE THAT ARE SUBJECT TO THAT, AND WE SIMPLY WANT TO GET THAT SO WE HAVE THAT GOING INTO THE MEDIATION.

**THE COURT:** ALL RIGHT. SO RELEVANT, BUT WHY ARE YOU LIMITING IT, AND WHY DON'T YOU TELL THEM WHAT'S ON THE SERVER OR WHATEVER -- THE REPOSITORY?

**MR. BUDAJ:** WE'RE GOING TO TELL THEM WHAT'S ON THE SERVER WHEN WE PRODUCE THOSE DOCUMENTS LATER TODAY.

**THE COURT:** WHY DON'T YOU TELL THEM NOW?

**MR. BUDAJ:** I MEAN, WE WEREN'T -- THIS DISCUSSION JUST HAPPENED A FEW DAYS AGO BECAUSE DYNATRACE ONLY --

THE COURT: IT'S LONG ENOUGH FOR ME TO GET THE LETTER AND HAVE TO WORK ON IT, SO IT'S LONG ENOUGH FOR YOU TO HAVE HAD THAT DISCUSSION.

MR. BUDAJ: IT WASN'T LONG ENOUGH, YOUR HONOR, FOR US TO UNDERSTAND THE FULL SCOPE OF WHAT'S IN THAT CENTRAL REPOSITORY. WE FIGURED THAT OUT BY TODAY, AND THOSE DOCUMENTS WILL BE PRODUCED. AND, OBVIOUSLY, WE CAN DISCUSS THAT AFTERWARDS, BUT ONLY --

THE COURT: SO WHAT DOES THAT -- DOES THAT OR DOES THAT NOT INCLUDE THE LETTER-TYPE CORRESPONDENCE THEY WERE JUST TALKING ABOUT IN THE FORM OF EMAIL?

MR. BUDAJ: WE THINK THAT IT SHOULD INCLUDE LETTER-TYPE CORRESPONDENCE THAT HAS BEEN SENT AND RECEIVED. AND WE CAN'T KNOW FOR SURE WHETHER IT INCLUDES EVERY SUCH INSTANCE UNLESS WE DO A FULL EMAIL SEARCH, WHICH WE UNDERSTAND THAT THE MODEL ESI ORDER AND THE NORTHERN DISTRICT OF CALIFORNIA GENERAL RULES DON'T PERMIT AT THIS TIME.

THE COURT: WELL, I THINK HE'S SAYING YOU HAVE -- SO YOU DON'T KNOW THE ANSWER. YOU HAVE -- DO YOU HAVE A LIMITED NUMBER OF CUSTODIANS AND A TIMEFRAME AND SO ON THAT YOU COULD VERIFY, OR SAMPLE, OR TO MAKE SURE THAT THAT WAS THE CASE?

MR. BUDAJ: YEAH, I MEAN, THERE ARE A LIMITED NUMBER OF CUSTODIANS AT ISSUE, I THINK, BUT --

THE COURT: HOW MANY?

MR. SINGER: THERE'S GOING TO BE THREE OR FOUR, YOUR

HONOR.  THE ISSUE IS CORRESPONDENCE IN OLD CASES ISN'T ACTIVE ON OUR EMAIL SERVER.  SO WE'LL HAVE TO RESTORE IT AND SEARCH IT, WHICH WE CAN DO.  IF THE COURT ORDERS US TO, WE WILL, BUT IT SEEMED A LITTLE PREMATURE FOR THAT TO US.

THE COURT:  WELL, IT SEEMS LIKE YOU FIRST -- I MEAN, IT MAY WELL BE THAT YOU SHOULD SEE WHAT YOU COME UP WITH IN THIS, AND THEN YOU SHOULD INTERVIEW THE CUSTODIANS AND SEE IF THEY THINK THERE'S SOMETHING MISSING OR NOT, AND, IF SO, MAYBE YOU NEED TO DO MORE.  BUT YOU SHOULD BE DOING SOME KIND OF VERIFICATION AND VALIDATION, ESSENTIALLY, RATHER THAN JUST COMING HERE AND SAYING, WE DON'T KNOW, WE'RE JUST FIGURING OUT TODAY, WE DON'T KNOW WHAT IT'S GOING TO HAVE, IT MAY OR MAY NOT, ET CETERA.

AND IT'S ABSOLUTELY TRUE THAT HAVING TO RESTORE THINGS AND SO ON, IT MAY WELL BE THAT THAT IS DISPROPORTIONATE. I DON'T KNOW BECAUSE THIS IS TOO VAGUE TO KNOW.

MR. McCLOSKEY:  YOUR HONOR, COULD WE COUNT ON A DECLARATION FROM THEM TO ATTEST TO WHAT THEY DID IN CONNECTION WITH DEFINING WHAT THE CENTRAL REPOSITORY INCLUDES, WHO WAS SEARCHED, CUSTODIANS, THINGS OF THAT NATURE?

MR. SINGER:  THAT'S FINE BY US, YOUR HONOR.

MR. McCLOSKEY:  SO WE CAN HAVE ASSURANCES --

THE COURT:  THAT SOUNDS LIKE A GOOD IDEA, YES.

MR. McCLOSKEY:  -- OF WHAT WAS DONE?

THE COURT:  THEN YOU SHOULD BE ABLE TO MEET AND

CONFER IF THERE SEEMS TO BE A PROBLEM WITH IT AND COME UP WITH A PROPORTIONAL WAY OF DEALING WITH IT.  SO, YOU KNOW --

MR. SINGER:  YES.

THE COURT:  IF THE MARGINAL VALUE IS INCREDIBLY SMALL AND THE COST IS VERY HIGH, THEN YOU WOULDN'T GET ANYTHING MORE, BUT RIGHT NOW I HAVE NO WAY OF TELLING.

OKAY.  NOW, SRI WANTS -- OKAY.  SO DYNATRACE WANTS TO HAVE THE ABILITY TO RUN THE PROGRAMS THAT YOU'RE TALKING ABOUT, AND IT SEEMS TO ME THERE'S A DEGREE OF CHICKEN AND THE EGG, BUT THERE OUGHT TO BE THINGS THAT ARE PRETTY CLEAR THAT YOU DO NEED, AND YOU SHOULD BE GIVING IT TO THEM RIGHT AWAY, AND THEN IF THEY COME UP WITH SOMETHING UNEXPECTED, THEN YOU SHOULD MEET AND CONFER AND TRY TO FIGURE OUT WHAT TO DO ABOUT IT.

MR. BUDAJ:  YES, YOUR HONOR.  AND THAT'S PRECISELY WHAT WE'VE ALREADY TOLD THEM THAT WE'RE GOING TO DO.  WE'RE GOING TO GIVE THEM KEYS THAT WE'RE ABLE TO GENERATE.  WE'RE GOING TO GIVE THEM INFORMATION THAT WE HAVE ON HAND, BUT WE'RE NOT -- THE ONLY THING WE WOULDN'T AGREE TO AT THE OUTSET WAS BEFORE YOU EVEN KNOW WHAT PROBLEMS YOU HAVE RUNNING OUR SOFTWARE, WE'RE GOING TO AGREE TO HELP YOU WITH WHATEVER THOSE PROBLEMS MIGHT BE, GIVEN THE SOFTWARE IS TWO DECADES OLD.

THE COURT:  ARE YOU GIVING THEM A KEY, YOU SAID?

MR. BUDAJ:  YES, YOUR HONOR.

THE COURT:  BECAUSE THAT'S ONE OF THE THINGS THAT WAS UNCLEAR.

**MR. BUDAJ:**  TO BE CLEAR -- AND I DON'T WANT THIS TO BE -- TO COME BACK.  TO BE CLEAR, I DON'T -- IT'S NOT CERTAIN THAT THAT KEY IS GOING TO WORK.  WE HAVE A KEY GENERATOR THAT IS USED, OR MAY HAVE BEEN USED FOR THIS VERSION OF THE SOFTWARE, BUT, AGAIN, YOUR HONOR, THIS IS TWO DECADES OLD SOFTWARE.  NO ONE IS STILL USING THIS VERSION OF THE SOFTWARE. IT'S OBSOLETE.

**THE COURT:**  HAVE YOU BEEN ABLE TO RUN IT?

**MR. BUDAJ:**  I HAVE NOT BEEN ABLE TO RUN IT, YOUR HONOR.

**THE COURT:**  SO NOBODY ON YOUR SIDE HAS BEEN ABLE TO RUN IT?

**MR. BUDAJ:**  THAT'S CORRECT.

**THE COURT:**  SO THEN THEY'RE NOT GOING TO BE ABLE TO RUN EITHER PROBABLY.

**MR. McCLOSKEY:**  WELL, I GUESS WE'LL SEE, YOUR HONOR. OF COURSE, WE HAVEN'T -- THEY WEREN'T THIS FORTHCOMING DURING THE CONVERSATIONS WE'VE HAD, OF COURSE.  WHAT WE REALLY WANT IS JUST ASSURANCES THAT IF THEY HAD SOMETHING THAT WAS AVAILABLE TO THEM, THEY WOULD PROVIDE IT TO US IN ORDER TO MAKE -- PROVIDE US WITH WORKABLE SOFTWARE.  AND WHAT WE HEARD WAS SORT OF A LOT OF TAP DANCING AROUND, WELL, WE'LL DO IT IF IT'S EASY, BUT WE'RE NOT GOING TO DO ANYTHING ELSE; WE'RE NOT COMMITTING TO DO ANYTHING FOR YOU, AND WE'RE GOING TO WASH OUR HANDS OF THIS AFTER, YOU KNOW, WE PROVIDE IT, AND GOOD LUCK.

AND WHAT WE JUST WANT TO ENSURE IS IF THEY DO HAVE SOMETHING THAT'S IN THEIR POSSESSION, CUSTODY, AND CONTROL THAT WILL ENABLE US TO ACTUALLY OPERATE THE SOFTWARE THAT THEY'RE PROVIDING THAT THERE'S PRODUCT, THAT THAT WILL BE MADE AVAILABLE TO US, AND THAT'S SOMETHING THEY GET TO, YOU KNOW, SORT OF KNOW FOR THEMSELVES AND WE DON'T.

THE COURT:  WELL, I DON'T KNOW WHAT FURTHER I CAN ORDER.  I MEAN, IT'S -- YOU SHOULD GIVE THEM ANYTHING YOU KNOW IS POTENTIALLY USABLE, LIKE THE KEY, ET CETERA, ALTHOUGH IT SOUNDS LIKE IT MAY NOT BE, AND THEN, YOU KNOW, YOU'LL HAVE TO COOPERATE AS MUCH AS POSSIBLE.

MR. BUDAJ:  AND, YOUR HONOR, WE'VE ALREADY AGREED TO THAT, AND I AGREED TO THAT ON A PHONE CALL WITH MY COLLEAGUE HERE.

THE COURT:  WELL, I DON'T KNOW --

(SIMULTANEOUS COLLOQUY.)

MR. BUDAJ:  I'M A LITTLE CONFUSED BY HIS COMMENTS.

THE COURT:  ALL I KNOW IS WHAT IS IN THE LETTER.

BUT -- ALL RIGHT.  SO IS THERE ANYTHING ELSE?  I THINK THAT COVERS --

MR. McCLOSKEY:  I THINK THAT COVERS IT, YOUR HONOR.

THE COURT:  ALL RIGHT.  SO, YEAH, I MEAN, I DO ENCOURAGE YOU IF YOU'RE GOING TO, FOR EXAMPLE, ASK FOR RELEASES FOR ALL SORTS OF OTHER PRODUCTS, THERE'S GOING TO HAVE TO BE SOME WAY IN WHICH THEY CAN VALUE THOSE.

**MR. McCLOSKEY:** I UNDERSTAND THAT, YOUR HONOR.

**THE COURT:** AND, YOU KNOW, I UNDERSTAND PEOPLE -- YOU CAN'T UNRING A BELL. ON THE OTHER HAND, IF THIS IS A SERIOUS MEDIATION, IT MAKES SENSE TO PRODUCE THOSE THINGS.

**MR. McCLOSKEY:** WE UNDERSTAND, YOUR HONOR.

**THE COURT:** AND YOU CAN DO THEM WITH ALL SORTS OF LEVELS OF CONFIDENTIALITY, ET CETERA.

**MR. McCLOSKEY:** RIGHT. WE APPRECIATE THAT. WE UNDERSTAND THAT. AND I THINK TO THE EXTENT THAT, YOU KNOW, INFORMATION IS AVAILABLE TO US, YOU KNOW, WE INTEND TO PROVIDE IT. AS I SAID, THERE'S SOME PRACTICAL ISSUES AROUND THAT AND FURTHER --

**THE COURT:** AS I SAY --

**MR. McCLOSKEY:** BEYOND THAT WE DON'T HAVE LICENSES AS WE.

(SIMULTANEOUS COLLOQUY.)

**MR. McCLOSKEY:** -- IN ANY CASE.

**THE COURT:** ANYWAY, SO BOTH OF YOU NEED TO BE MORE ROBUST IN YOUR DISCLOSURES TO EACH OTHER IN TERMS OF WHY YOU DON'T HAVE SOMETHING, AND WHAT EFFORTS YOU MADE, AND SO ON, AS I WAS SAYING.

ALL RIGHT. THANK YOU.

**MR. McCLOSKEY:** THANK YOU, YOUR HONOR.

**MR. BUDAJ:** THANK YOU, YOUR HONOR.

(PROCEEDINGS ADJOURNED AT 11:32 A.M.)

## CERTIFICATE OF TRANSCRIBER

I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE ABOVE MATTER.

I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

*jmcolumbini*

JOAN MARIE COLUMBINI

AUGUST 8, 2018

**JOAN MARIE COLUMBINI, CSR, RPR**
**RETIRED OFFICIAL COURT REPORTER, USDC**
**510-367-3043**